**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No: 2:22-CR-194** |
| | : | |
| **v.** | : | |
| | : | **JUDGE EDMUND A. SARGUS** |
| **BERNHARD JAKITS** | : | |

<u>**CONSOLIDATED RESPONSE OF THE UNITED STATES TO
DEFENDANT'S MOTIONS TO DISMISS**</u>

Now comes the United States, by and through the undersigned Assistant United States

Attorneys, and hereby submits, in consolidated fashion, its opposition to the three motions of

Defendant Bernhard Jakits' to dismiss various counts of the Superseding Indictment (Docs. # 56,

Motion to Dismiss; # 57, Motion to Dismiss Counts One Through Eight; # 59, Motion to

Dismiss Count Nine.)  All of the defendant's motions should be denied.  First, the Superseding

indictment is sufficient because: (1) it contains the elements of the offenses charged; (2) it "fairly

informs" the defendant of the charge he must meet; and (3) there is no risk of future prosecutions

for the same offenses.  The sufficiency of the Superseding Indictment and the detailed discovery

materials that the government has provided further renders a bill of particulars unnecessary.

Second, Counts One through Eight are neither duplicitous nor multiplicitous. Counts One and

Two each properly charge a completed crime and a lesser included attempt offense in a single

count, and each of the counts properly charges a separate offense as each requires proof of a fact

that the other charges do not.  Finally, Count Nine does not violate the defendant's rights under

the First or Fifth Amendments because he has neither a First Amendment nor substantive due

process right to transport, distribute, or receive obscene material.

## FACTUAL AND PROCEDURAL BACKGROUND

In the latter part of 2018, the defendant began an invasion of the lives of a mother and two children who were living in small communities in southeastern Ohio and northwestern West Virginia.  The mother, A.M., had many issues.  She was severely drug addicted, destitute and at times homeless, hiding from police because there were warrants for her arrest, and provided little to no parental guidance to her two daughters.  Those daughters, Jane Doe #1 and Jane Doe #2, were 15 and 13 years old, respectively, and they primarily lived with their grandmother.  At times, there were numerous other people living in the house because money was tight.

Given her drug addiction and criminal issues, A.M. resorted to prostitution to survive. She posted information on a website popular for those offering or seeking commercial sexual services, Skip the Games.  That is how the defendant found her.  In or around November of 2018, he contacted A.M. via the cell phone number she had included in her ad on Skip the Games.  At that time, A.M. was mostly staying at the home of a friend in a suburb of Wheeling, West Virginia, while her daughters lived with their grandmother in a small town across the river, Martin's Ferry, Ohio.  The relationship that developed between A.M. and the defendant was a commercial one: during video calls via the online application Google Duo, she performed various sexual acts that he requested, and he sent her money via Western Union.  He knew where she was living because they explicitly discussed it, including her address in Ohio where she received mail.  He also knew that she was an addict and was always desperate for money.  He eventually learned that she had minor daughters.

Prior to Christmas of 2018, the defendant's sexual requests of A.M. began to change. After she had engaged in some "normal" sex acts for the defendant, she learned that the defendant had been recording their video calls.  He asked her to do some sexual things she did

2

not want to do—drinking her own urine and engaging in sex acts with animals for example—and when she expressed reluctance do the defendant's bidding, he showed her some of the recordings he had made of her prior sex acts. And he threatened her. If she did not engage in those sex acts he wanted, he would send the videos (or still images from them) of A.M. engaging in sex acts to A.M.'s family. Thus, A.M. complied. She complied repeatedly, participating in numerous video calls with the defendant in which he demanded that she repeatedly masturbate and perform oral sex on a dog, that she urinate in a cup and drink the urine, and that she insert (or attempt to insert) her whole hand, foot, and/or various objects into her vagina, anus, and mouth. The defendant continued to pay A.M. for these acts, but earning the money was a moving target. It was not enough for A.M. to perform oral sex on the dog. She had to do it as many times as the defendant told her, because he was giving her a lot of money and she had to do what he said. It also did not matter how much visible distress these acts caused A.M. The defendant continued to demand that she perform as he wished. The last video chat that the defendant recorded occurred around Christmas Eve of 2018 and depicted a visibly pregnant A.M., amongst other things, inserting an object into her anus, then her mouth, then her vagina.

Before A.M. turned herself in on the outstanding warrants shortly after Christmas in 2018, she had returned to Martin's Ferry where she was sometimes staying with her mother and daughters. As she was still communicating with the defendant at that time, he learned that she had daughters and the daughters learned about the defendant. In fact, Jane Doe #1 overheard the defendant ask A.M. if Jane Doe #1 could model for him, and A.M. tell him no. Jane Doe #1 also

read some of the messages between A.M. and the defendant and knew some of the sexual things that the defendant had required A.M. to do.

When A.M. surrendered to local law enforcement at the end of December to resolve the pending arrest warrants, she left her Samsung phone, which she had used to communicate with the defendant, at the home where her mother and daughters were living. During her subsequent incarceration, she called the defendant at least twice, using the recorded jail phone system. In one call, she requested that the defendant put some money on her books, and the defendant agreed to do so. In the second call they discussed the money that the defendant had put on A.M.'s books and A.M.'s family. The defendant asked A.M. to tell her family that he didn't bite, to which A.M. responded that she had told her family to steer clear of the defendant and he should leave them alone because, as she said twice to the defendant, they were children.

Unfortunately, A.M. soon learned that the defendant had not heeded her warning. After a conversation with her mother and daughters in approximately mid-January of 2019, A.M. reached out to law enforcement because she was concerned that the defendant had convinced Jane Doe #1 and/or Jane Doe #2 to engage in the same sort of acts she had done for the defendant. A.M. explained to detectives with the Belmont County Sheriff's Office ("BCSO") how she had met the defendant through her involvement in prostitution and had engaged in sex acts during video chats with him.

After A.M. initially reported her concerns about the defendant's involvement with her daughters, the BCSO conducted forensic interviews with Jane Doe #1 and Jane Doe #2, and further interviews with A.M. The grandmother of the minor girls turned over the phones that she, A.M., and the Jane Does had been using, and BCSO did a preliminary review of those phones. Their investigation also obtained some identifying information of the defendant, which

suggested that he lived outside the jurisdiction of the local law enforcement agency. Thus, when, in early 2020 FBI Special Agent Andrew McCabe was newly assigned to the FBI office that covered Belmont County, the BCSO brought their investigation to his attention.

The FBI then initiated a federal investigation of the defendant in approximately January of 2020. SA McCabe interviewed A.M. for himself and submitted the phones that BCSO had obtained from the victims for FBI forensic experts to extract. A.M. reiterated to SA McCabe the things about the defendant that she had previously told the BCSO detective and also identified a photograph of the defendant that SA McCabe had found on the website for the defendant's yachting company.

SA McCabe's preliminary forensic review of the phones utilized by the minor girls revealed images of Jane Doe #1 and Jane Doe #2 and TextNow messages with the defendant. The images were eventually determined to largely depict Jane Doe #1. Some of the images depicted her body and face fully clothed, others depicted her in a bra and underwear, and several depicted her fully nude and posed in various ways on a bed. There were also several pictures that depicted just Jane Doe #1's nude vagina. The few photos of Jane Doe #2 were mostly clothed. There were several of her and Jane Doe #1's faces, an image of Jane Doe #2 holding up a medical document containing her name and date of birth, and a selfie image of the 13-year-old girl nude.

The TextNow messages between the girls and the defendant, which occurred between approximately January 14 and 21, 2019, were located on Jane Doe #1's iPhone. Those communications show that the defendant specifically requested an image of Jane Doe #2 in the nude, which the girls sent to him, and a photo of Jane Doe #2 holding a document that showed her name, which the girls also sent to him, and which also included her date of birth.

During the chats that were found on Jane Doe #1's iPhone, the defendant also sought to engage in a video conference via Facetime with both girls.  When Jane Doe #1 tried to get specific answers from the defendant about what he wanted them to do during the Facetime video call, he was evasive, saying that he wanted Jane Doe #2 to "model and do certain things Nothing nasty I promise Plus a couple of pictures that I want her to take of how I want it."  When Jane Doe #1 said that they wanted to do the pictures first and then the Facetime so it would go faster, the defendant agreed but refused Jane Doe #1's request that he send her the poses via text, telling her to have Jane Doe #2 call him.  After an approximately one-minute call from Jane Doe #1's phone to the defendant, and several attempts by the defendant to reach out to the girls, Jane Doe #1 informed the defendant that they did not feel comfortable engaging in the Facetime video call with him.  From that point on, and for the next five days, the defendant engaged in a persistent text message and phone call assault on the girls, offering increasing amounts of money and other items of value (such as a car and plane tickets to Jacksonville, Florida) if they would send him pictures or Facetime with him.  During that time, Jane Doe #1 responded three times: she first told the defendant that she and her sister weren't doing it, then asked what they had to do on Facetime, and finally reiterated that they did not feel comfortable doing it.

In addition to reviewing the victims' phones, SA McCabe issued numerous subpoenas to gather more information about the defendant.  The information he obtained confirmed the defendant's identification and residence in Annapolis, Maryland, confirmed that the defendant had sent money to the victims via Western Union, and revealed that the defendant utilized at least one Apple device and had an iCloud account.  In April of 2020, SA McCabe obtained and served on Apple a search warrant for the content of that iCloud account.  Apple responded by sending SA McCabe the full content of the defendant's account, and his initial review of that

6

content revealed images of Jane Doe #1 and Jane Doe #2 that appeared to be identical to the ones that had been recovered from the phones used by the Jane Does.

Based on the evidence in the defendant's iCloud and on the victims' phones, SA McCabe worked with FBI agents in Maryland to obtain search warrants for the defendant's person and residence, which were executed in December of 2020. Agents seized numerous digital devices from the defendant's residence, but, upon execution of the residential warrant, they learned that the defendant had flown to Los Angeles early that morning. The agents in Maryland then obtained assistance from FBI agents in Los Angeles, who met the defendant when he deplaned there. The defendant agreed to speak with the agents and consented to their searches of the iPad and laptop that were in his carry-on luggage. During the review of the iPad, agents located a Photo Vault application and, within it, images of bestiality and folders labeled with the names of Jane Doe #1, Jane Doe #2, and A.M. Those victim-named folders contained photos that appeared to be the same as the ones found in the defendant's iCloud account and on the victims' phones, including close-up depictions of Jane Doe #1's nude genitalia.

Forensic extraction and review of the devices seized in Maryland and Los Angeles took place over the next several months. Those reviews generally confirmed the presence of images of Jane Doe #1 fully clothed, wearing a bra and underwear, nude posed on a bed, and exposing just her nude genitalia to the camera while lying on the same bed. These images were the same as the ones recovered from two of the devices that Jane Doe #1 said that she used to communicate with the defendant. There were no communications on any device that indicated how those photos were sent to the defendant, but the metadata for the images suggested that they were taken and sent to the defendant in early January of 2019, prior to the time of the communications that had been recovered from Jane Doe #1's iPhone. The photo of Jane Doe #2

7

in the nude and several clothed photos of both girls that were sent during the conversation recovered from Jane Doe #1's iPhone were also found on the defendant's devices.

Subsequent to the defendant's interactions with FBI agents in December of 2020, he hired counsel to represent him. During the ensuing two years, counsel and the government communicated about the likely trajectory of the investigation and potential criminal charges. The government provided counsel with initial discovery materials in November of 2021, which included details of the forensic reviews that had been conducted to date. After ongoing negotiations throughout the following 10 months, the parties ultimately could not reach a pre-indictment resolution of the case. As such, an initial indictment was returned in October of 2022. That Indictment charged the defendant with sexual exploitation of a minor, coercion or enticement of a minor, advertising for and receiving child pornography, and transmitting a communication with intent to extort A.M. (Doc. #3, Indictment.)

While reviewing the forensic extractions of the defendant's devices in preparation for the initial indictment, SA McCabe observed videos he believed to depict A.M., which corroborated what she said about the sexual acts the defendant forced her to perform lest he share explicit, embarrassing, and degrading videos and images of her with her family. Although SA McCabe's cursory view of these videos provided the basis for the interstate extortion count in the initial indictment, SA McCabe's observation also led him to seek additional warrants authorizing further searches of the defendant's devices and iCloud content for evidence pertaining to the defendant's criminal actions towards A.M.[1] Armed with the new search warrants SA McCabe

---

[1] Because the initial search warrants for those items had limited the government to seizing evidence related to child pornography and child exploitation, SA McCabe could not conduct any further investigation of any files he believed depicted A.M.

also sought the assistance of an FBI agent with more experience with forensic examinations and sexual exploitation materials.

Special Agent Josh Saltar, who is a member of the FBI's Child Exploitation and Human Trafficking Task Force, began anew the forensic extractions and reviews of the eight digital items that SA McCabe had identified as pertinent to the investigation. That included an iPhone, a Samsung phone, and an Alcatel phone used by the victims, and an iPhone, iPad, Macbook laptop, iMac desktop, and iCloud account all belonging to the defendant. SA Saltar's review confirmed the messages between Jane Doe #1's iPhone and the defendant, including the images that Jane Doe #1 and Jane Doe #2 sent to the defendant, and that the messages in which Jane Doe #1 sent the defendant nude and bra-and-underwear images of herself had been deleted. His review of the defendant's devices and iCloud also revealed that the defendant had been utilizing an iPhone 7 at the time of his communications with A.M. and the Jane Does. No iPhone 7 was ever obtained during the investigation.[2] The defendant's devices also contained significant evidence of the interactions between the defendant and A.M. Within the Photo Vault application on the defendant's iPad and iPhone, in a folder titled with A.M.'s name, SA Saltar found hundreds of images and numerous videos of A.M. engaged in various sex acts. Amongst those were recordings of Google Duo video calls between A.M. and the defendant, during which the defendant ordered A.M. to, *inter alia*, engage in oral sex with a dog and to insert an object into her vagina, then her anus, then her mouth, and then her vagina again. Metadata and other information from A.M.'s cellular phone indicated she was at a residence in West Virginia when

---

[2] The government learned for the first time on January 25, 2023, from the reply brief that the defendant filed in the appeal of the detention order this case, that the iPhone 7 had been in the custody of defendant's counsel. *See Case No.* 23-3011, Doc # 11 (Appellee's Reply Brief at 14). The government attempted to obtain that device from counsel but was informed that it was no longer in counsel's control.

the video calls involving bestiality occurred and when the defendant threatened her but was back across the river in Southeastern Ohio when the video involving the object insertion was created.

In January of 2023, the Grand Jury returned a Superseding Indictment charging the defendant with four counts of Sexual Exploitation of a Minor (or Attempt), in violation of 18 U.S.C. § 2251(a); two counts of Attempted Coercion or Enticement of a Minor, in violation of 18 U.S.C. § 2422(b); one count each of Making a Notice for Child Pornography and Receiving Child Pornography, pursuant to 18 U.S.C. §§ 2251(d) and 2252(a)(2) respectively; and one count of Transportation of Obscene Matters, in violation of 18 U.S.C. § 1462(a). (Doc. # 46, Superseding Indictment.) Because the defendant's threat to extort A.M. had occurred when she was in West Virginia, the Superseding Indictment did not include the interstate extortion charge. However, because A.M. was in Ohio at the time of the object-insertion video, and the defendant caused her to transport a live streaming depiction from Ohio to him outside of Ohio, the Superseding Indictment added a charge of interstate transportation of obscenity.

After the Superseding Indictment was issued in January, the defendant moved to continue the previously-scheduled February 27 trial date. (Doc. #49, Continuance Motion.) The Court granted that request and trial is now scheduled to begin on April 17, 2023. (Doc. # 54, Order.) On January 31, 2023, the defendant filed a motion to dismiss the Superseding Indictment. (Doc. #56, Motion.) Subsequently, he filed separate motions seeking to dismiss Counts One through Eight and Count Nine of the Superseding Indictment. (Docs. # 57 and 59, Motions.)

## ANALYSIS AND ARGUMENT

### I. The Indictment Is Legally Sufficient and Factually Specific.

While the Fifth and Sixth Amendments to the Constitution establish the general rights to notice and presentment of felony charges that are guaranteed to criminal defendants, it is the

Federal Rules of Criminal Procedure that provide context and guidance as to proper indictment content and processes to challenge the sufficiency of an indictment. Federal R. Crim. P. 7(c)(1) instructs that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged. . . ." Federal R. Crim. P. 12(b)(3)(B)(v) requires a defendant to raise pretrial any motion to dismiss an indictment for failure to state an offense.

Rule 7(c)(1) is "'designed to eliminate technicalities in criminal pleadings and [is] to be construed to secure simplicity in procedure.'" *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) (quoting *United States v. Debrow*, 346 U.S. 374, 376 (1953)).  An indictment is constitutionally sufficient if it (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend;" and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Id*. at 108 (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  Importantly, for the purposes of the defendant's motions, "an indictment is to be construed liberally in favor of its sufficiency." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).  In addition, "[t]he indictment must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications." *Id*. The general rule is that an indictment meets these standards if it "clearly track[s] the language" of the statutes charged. *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010).  *See also United States v. Collis*, 128 F.3d 313, 317 (6th Cir. 1997) (indictment sufficient where "[t]he charged offense fully tracks the relevant language of" the statute).

A. *The Superseding Indictment Satisfies the Constitutional Requirements.*

In this case, each count of the Superseding Indictment tracks the language of the relevant statute and provides the defendant with the facts pertinent to each separate offense.  The charges

inform the defendant of the date or date range he is alleged to have committed each criminal offense; provide the identity of the victims of each offense; describe the venue for each offense; recite the statutory elements of the offenses charged; and generally describe the sexually explicit nature of the acts engaged in by the victims or in which the defendant sought to have them engage.  All nine counts of the Indictment also detail the exact means of interstate or foreign commerce that the defendant used to facilitate the crime, noting specifically if it was a cellular phone, the internet, an interactive computer service, or some combination of the three.  This information sets forth all the *essential* elements of the offenses.  *See* Sixth Circuit Model Jury Instructions, Sections 16.01, 16.05, and 16.09; *United States v. Sammons*, 2-19-cr-00107, Doc. # 120 at 25-26 (S.D. Ohio, June 25, 2021) (providing elements of 18 U.S.C. § 2251(d)).

All this information tells the defendant that on specific dates or date ranges between December of 2018 and January of 2019, he is charged with interacting with three different victims via internet, cellular phone, and interactive computer service for specific criminal purposes.  Regarding Jane Doe #1, who was 15 years old at the time, he interacted with her on two occasions, first from December of 2018 to January 13, 2019, then again from January 15, through January 21, 2019.  During the first interaction, which was via cellular phone and the internet, he engaged in various specified actions (i.e., employed, used, persuaded, induced, enticed, and coerced) to cause her to produce digital images that depicted her lascivious display of the genitalia and pubic area.  During the second interaction with Jane Doe #1, the defendant engaged in the same acts (employment, use, etc.) with the intent that Jane Doe #1 engage in sexually explicit conduct, as that term is defined by statute, and his actions were intended to cause Jane Doe #1 to create or transmit live visual depictions of herself so engaged.  Similarly, the defendant knows from the Indictment that he interacted with Jane Doe #2, who was 13 years

12

old at the time, via cellular phone and the internet, on January 15, 2019, and that, during that interaction, he engaged in specified acts that he intended to cause or that did cause her to create an image of herself lasciviously exhibiting her genitalia and pubic area. His second interaction with Jane Doe #2, which began immediately after the first and continued through January 21, 2019, involved the defendant committing the same specified acts, with the intent that Jane Doe #2 engage in the statutorily defined sexually explicit conduct, and his actions were intended to cause Jane Doe #2 to create or transmit live visual depictions of herself so engaged.

The defendant also knows that his second interactions with Jane Doe #1 and Jane Doe #2, the ones that started in mid-January of 2019 and were conducted using the internet and cellular phones, were aimed at getting the girls to commit acts that, if completed, would have been a violation of Ohio Revised Code Section 2907.323, which prohibits using a minor in a nudity-oriented material or performance. He knows that his interactions with the girls involved statements communicated via internet and cellular phone in which he sought depictions of both girls engaging in sexually explicit conduct. He has been informed that, in the first half of January of 2019, he used a phone and the internet to receive images of Jane Doe #1 lasciviously exhibiting her genitalia and pubic area. Finally, he knows that on December 24, 2018, he received an obscene live streaming depiction of A.M. that she transmitted to him from Ohio.

Reading all this information contained in the Superseding Indictment "as a whole … and in a practical sense with all the necessary implications," *McAuliffe*, 490 F.3d at 532, it is more than sufficient to meet the constitutional requirements of notice and protection against double jeopardy. While the defendant may want the indictment to set forth the specific words he used to effectuate these offenses or the specific file names that relate to the charges, that is not what the Constitution requires. *See United States v. Richard*, 775 F.3d 287, 292 (5th Cir. 2014) ("An

13

indictment need not list every particular of the offense."); *United States v. Horton*, 580 F. App'x 380, 386 (6th Cir. 2014) (contrary to defendant's claim that indictment "fails to identify a single fact or detail," where indictment provided "a seven-day timeframe during which Horton committed the offense, the place where Horton mailed the threatening communication, and the entity to whom Horton addressed the communication," indictment was "sufficient to protect Horton from double jeopardy").  The Superseding Indictment informs him of the elements of the offenses with which he is charged and sufficient factual details—his alleged actions and the victims of, time, and place of those actions—for him to understand the charges against which he must defend and "to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117.  Thus, it is constitutionally sufficient.  *See United States v. Tillotson*, 490 F. App'x775, 778 (6th Cir. 2012) (indictment informing defendant he was charged with "using his computer to advertise, possess, and distribute child pornography between September 16, 2007, and November 6, 2007," provided "description sufficient to apprise [defendant][] of the charges against him).

> B. *The Defendant Is Not Entitled to Greater Specificity.*

Despite the detail recounted in the Superseding Indictment, the defendant claims that the document is facially insufficient for him to prepare for trial and exposes him to double jeopardy risk.  Although he repeatedly makes vague and general allegations regarding the lack of specificity in the Indictment, he has articulated precious little in terms of what specific information is missing.  His repetitive arguments seem to boil down to: 1) he wants to know the names of the files at issue in the child pornography and obscenity counts; 2) he thinks he is entitled to greater specificity as to the evidence underlying the charged offenses; and 3) he

claims that intent-related elements must be specifically stated for the Indictment to pass constitutional muster. The defendant is wrong on all these issues.

### 1. Titles of child pornography files and specific acts committed

The defendant claims that, to be constitutionally sufficient, the Indictment must inform him of the titles of the files that he produced or received and what specific actions he took to produce or received those files. Such detail is not required by the Constitution. The information in the Indictment sufficiently apprises the defendant of the charges against him without any specification of the names of the images created, the particular acts the defendant or the victims took, or any statements the defendant made.

Counts One through Four and Eight allege that the visual depictions the defendant caused to be produced, attempted to produce, and received involved sexually explicit conduct as that phrase is defined by federal law, specifically 18 U.S.C. § 2256(2)(A). Counts One, Two, and Eight further specify that the sexually explicit activity involved is the lascivious exhibition of the genitalia and pubic area. The charging document also specifically alleges what actions the defendant took to commit each offense:

- Employed, used, persuaded, induced, enticed, and coerced, or attempted to do so (Counts One through Four)
- Attempted to persuade, induce, entice, and coerce (Counts Five and Six);
- Made and published notices, meaning that he sent statements via cell phone and the internet (Count Seven).[3]

This information is sufficient to "assert facts which in law constitute an offense; and which, if proved would establish prima facie the defendant's commission of the crime." *United States v.*

---

[3] As far as the government can tell, the defendant does not appear to argue that Counts Eight and Nine lack any specificity in describing his actions, which, for both counts, is just receiving visual depictions.

*Palma*, 58 F.4th 246, 249 (6th Cir. 2023) (quoting, *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001).

As a court in this district recently observed, "there is precious little case law discussing exactly what 'prima facie' means" in the context of "*how much* factual information an indictment must provide." *United States v. Sittenfeld*, 522 F.Supp.3d 353, 364 (S.D. Ohio 2021) (emphasis in original). After reviewing the Sixth Circuit cases that have interpreted the *Hamling* requirements, the *Sittenfeld* court found the cases to indicate an indictment need only set forth the statutory elements and the time period the offense allegedly occurred. *Id*. at 364-65. This view is consistent with other decisions of district courts within this circuit and from other Courts of Appeals. The Fifth Circuit has stated that an indictment need not "allege in detail the factual proof that will be relied on to support the charges." *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978). *See also United States v. Gordon*, 780 F.2d 1165, 1172 (5th Cir. 1986) (indictment need not "provide [defendant] with the evidentiary details by which the government plans to establish his guilt"); *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981) ("[D]efendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved."). In a case akin to this one, the District Court for the Eastern District of Michigan declined to dismiss an indictment charging a defendant with "receiving and possessing material consisting of 'depictions of a minor engaging in sexually explicit conduct,'" but not specifying what the sexually explicit conduct was, finding the indictment "satisfies the requirements of Federal Rule Criminal Procedure 7(c) and the notice provision of the Sixth Amendment." *United States v. Fisk*, 255 F. Supp. 2d 694, 701-02 (E.D. Mich. 2003). *See also United States v. Christie*, 570 F. Supp. 2d 657, 687 (D.N.J. 2008) (where indictment alleged that defendant accessed links to image and movie files "depicting pubescent

and pre-pubescent female minors engaged in sexually explicit conduct with other … minors, and with adults" and that the sexually explicit conduct included "genital-genital contact, oral-genital contact, masturbation, and the lascivious exhibition of the genitals and pubic area," the "law does not require a more detailed statement to put [defendant][] on notice of the crime with which he is charged").

The Superseding Indictment contains the defendant of the elements of each offense in language that tracks the relevant statute[4] and provides the date, location, and victim of each offense. Furthermore, where actual visual depictions were created or received, i.e. Counts One, Two, and Eight, the government has specified what type of visual depictions (images) are at issue and what is depicted in them (lascivious exhibition of the genitals and pubic area).

The other child pornography related counts (Counts Three, Four, and Seven) do not involve the actual creation of any visual depictions that can be described, whether by file title, content of the file, or anything else. None of these counts require the government prove any visual depiction was created. *See United States v. Hart*, 635 F.3d 850, 857 (6th Cir. 2011) ("A person violates 18 U.S.C. § 2251 if he or she *attempts to persuade* a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct." (emphasis added)); *United States v. Sammons*, 55 F.4th 1062 (6th Cir. 2022) (defendant convicted for § 2251(d) offense for seeking and offering minors to engage in sexually explicit conduct but apprehended before

---

[4] That the defendant's acts may have constituted each of the verbs listed in the statutes does not impact the Indictment's sufficiency. Neither the grand jury nor a trial jury are required to unanimously agree on which of the verbs the defendant did, because they are all means of committing the offense, not elements. *See Richardson v. United States*, 526 U.S. 813, 817 (1999) (while a jury must unanimously determine whether government has proven all elements of a charged offense, it "need not always decide unanimously … which of several possible means the defendant used to commit an element of the crime").

videos of such were created). For these counts, the Indictment informs the defendant that the depictions he intended to create would have depicted "sexually explicit conduct." This phrase is statutorily defined. *See* 18 U.S.C. § 2256(2)(A).  As such, its meaning "does not change with each indictment; it is a term sufficiently definite in meaning to give a defendant notice of the charge against him." *Hamling,* 418 U.S. at 118–19 (citing *Roth v. United States*, 354 U.S. 476, 491-492 (1957).  The defendant need only refer to the statutory definition to understand that with which he is charged.  The same is true of Count Nine, as the obscenity the defendant is charged with receiving is "not a question of fact, but one of law." *Id*. at 118.

Counts Five and Six, which charge the defendant with *attempted* coercion of a minor, likewise do not involve any visual depiction that can be described.  Section 2422(b) does not require that any specific image or video be created; it requires only that the defendant communicate in the ways specified by statute with the intent or purpose that is also statutorily articulated. *See United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011) (government need only prove that defendant intended to persuade minor to engage in illegal sexual activity).  As to the phrase "any sexual activity" that is used in these counts, the government need not allege, and a jury need not "unanimously agree on the specific type of unlawful sexual activity" that anyone would have engaged in had the offense been completed. *Hart*, 635 F.3d at 855-56.  Rather, the government is only required to prove "and the jury unanimously agree, that the defendant attempted to persuade a minor to engage in sexual activity that would have been chargeable as a crime if it had been completed." *Id*. at 855.  Although the Superseding Indictment informs the defendant of one criminal offense with which a person could be charged if he had succeeded in his coercion of the Jane Does, that underlying chargeable offense is not an element on which the jury must agree.

18

The defendant's submission to the Court of indictments from other cases that have included specificity in the form of file titles or specific acts does not change any of the foregoing analysis. Indeed, the government can likewise cite to the Court numerous cases that have proceeded to trial in this district on indictments that did not contain the specificity the defendant claims is a constitutional requirement. *See Sammons*, 2:19-cr-00107, Doc. #12 (S.D. Ohio, April 23, 2019); *United States v. Sweeney*, 2:16-cr-00073, Doc. # 11 (S.D. Ohio, March 31, 2016); *United States v. Veerkamp*, 1-20-CR-00020, Doc. #17 (S.D. Ohio, February 19, 2020). That both parties can find examples of indictments charging the relevant offenses in different ways indicates that it is neither improper for an indictment to include specific details nor constitutionally required to include such information.

The defendant's heavy reliance on *United States v. Hillie*, 227 F. Supp. 3d 57 (D. D.C. 2017) fares the same. Whether the district court found in that particular case that greater specificity was needed has no impact on the constitutional sufficiency of the Indictment in this case. Even if *Hillie* were at all controlling here, the facts and the indictments are different, as even the defendant admits that the Superseding Indictment here provides more factual detail than the indictment in *Hillie*. His reliance on *Hillie* is, like his reliance on indictments from other cases in this district, is undercut by cases that have found indictments like the one in *Hillie* sufficient. *See United States v. Bailey*, 778 F.3d 1198, 1200 (11th Cir. 2015) (where indictment charged four counts of violating § 2251(a), which were identical save for overlapping date ranges, indictment provided defendant with sufficient notice when it was "undisputed that, well before trial, he knew precisely which of the four video images were charged in each count"); *United States v. Beasley*, 688 F.3d 523, 533 (8th Cir. 2012) (indictment charging eight counts of completed § 2251(a) offenses and two counts of attempted § 2251(a) offenses with overlapping

multiple-year time frames and no reference to specific files sufficiently informed the defendant of the charges and protected him against double jeopardy).

Other than the repeated cites to and quotes from *Hillie*, the defendant has articulated no legal rule or case, and particularly no case that is controlling in this jurisdiction, that requires the government to specify the names of images created, what words he used, what kind of phone anyone used, what phone number, email address, or other identifier he or anyone else used during their communications, or any other fact the defendant references with his vague claim that the Superseding Indictment does not provide "sufficient detail regarding the specific actions." (Doc. # 56, Motion at 629.)

Even if there were some factual ambiguity in the Indictment, it is clear that the defendant is well aware of the evidentiary details supporting the charges in this case. In his Motion to Revoke the Detention Order (Doc. # 37, Motion to Revoke) he admits that "in discovery, the government has identified 27 digital photographs it believes Jane Doe #1 sent to Mr. Jakits…the large majority of those photos depict persons who are fully clothed, wearing underwear, and/or not engaged in anything that could even arguably be characterized as 'sexually explicit conduct'…" (*Id*. at 236-37.) In fact, the defendant himself goes on to acknowledge that "six images do show, at least in part, female genitals, and the government appears to premise its case on the contention that at least one of these six photos rises to the level of 'lascivious exhibition of the genitals.'" *Id*. He further asserts that "this case involves an exceedingly small number of images and all of those images are, at best, at the outer margins of what one can even argue meets the statutory definition of 'sexually explicit conduct.'" *Id.* All of these statements reveal the defendant's significant familiarity with the factual details of this case. He has all of the

information necessary to prepare for trial, and the Superseding Indictment meets all constitutional requirements.

      2.  <u>Elements of the attempt offenses</u>

Although he repeatedly and generally claims that the Superseding Indictment fails to set forth the elements of the charged offenses, the defendant only specifically articulates that the intent and overt act elements in the attempt charges are missing.[5] (Doc. # 56, Defendant's Motion at 629-30.) This argument ignores Supreme Court and Sixth Circuit precedent regarding attempts and intent.

"Not only does the word 'attempt' as used in common parlance connote action rather than mere intent, but more importantly, as used in the law for centuries, it encompasses both the overt act and intent elements." *Resendiz-Ponce,* 549 U.S. at 107. As such, an indictment that alleges an attempt to commit an offense "need not specifically allege a particular overt act or any other 'component par[t]' of the offense." *Id.* (quoting *Hamling*, 418 U.S. at 119) (alteration in original). Rather, it is implicit that the "substantial step or overt act is charged where the grand jury alleges that a defendant 'did attempt' the commission of a specific criminal act." *United States v. Davis*, 300 F. App'x 393, 398-99 (6th Cir. 2008). Here, the government alleged that the defendant "did attempt." The overt act is implicit in that charge.

Similarly, *mens rea* is an element that can be inferred from the language of a charge rather than explicitly stated. *See United States v. Killingsworth*, No. 21-3028, 2022 WL 294083, at * 4 (6th Cir. Feb. 1, 2022) (indictment that charged defendant "willfully and knowingly" posted a communication on Facebook "for the purposes of issuing a threat…" but did not explicitly charge that defendant intended to threaten victims, contained "each element necessary

---

[5] The defendant only articulates this argument in regard to Count One. The government presumes that he is making this argument regarding all the attempt counts in the Indictment.

to constitute an offense … including the intent requirement") (internal quotations omitted, alteration in original).  The Sixth Circuit has discussed this intent inference in the context of fraud offenses.  Although intent to defraud and materiality of misrepresentations are essential elements of fraud charges, "an indictment is not fatally insufficient for its failure to allege these elements *in haec verba*, if the facts alleged in the indictment warrant the inference of such elements, i.e., materiality and intent to defraud." *McAuliffe*, 490 F.3d at 532.  *See also United States v. Banyan*, No 3:14-cr-00101-2, 2015 WL 5254372, at 2 (M.D. Tenn. Sept. 9, 2015) (intent to defraud can be inferred from allegations in the indictment).  The Indictment alleges, in Counts One through Four, that the defendant acted "for the purpose of" producing visual depictions or transmitting live visual depictions.  (Doc. # 46, Superseding Indictment.)  This phrase "means that the defendant acted with the intent to create visual depictions of sexually explicit conduct."  Sixth Circuit Pattern Criminal Jury Instruction 16.01.  The phrase necessarily sets forth an intent element, and Counts One through Four, as with all other counts of the Indictment, sufficiently apprise the defendant of the elements of the offenses charged.

## II.       The Defendant is Not Entitled to a Bill of Particulars

The defendant's request for a bill of particulars should also be denied because, as shown above, the Superseding Indictment sufficiently apprises him of the nature of the charges against him.  Furthermore, the government has provided extensive discovery that more than enables him to prepare for trial.

Federal Rule of Criminal Procedure 7(f) permits a defendant to move for a bill of particulars.  A bill of particulars is warranted "if necessary to the preparation of the defense, and to avoid prejudicial surprise at trial." *United States v. Musick*, 291 F. App'x 706, 724 (6th Cir. 2008).  If an indictment sufficiently apprises a defendant of the charges against him, and

discovery materials eliminate any "remaining ambiguity," a bill of particulars is not necessary. *Tillotson*, 490 F. App'x at 778. *See also United States v. Foster*, No. 1:20-cr-186, 2022 WL 3378639, at *2 (N.D. Ohio August 12, 2022) ("The level of detail in the indictment can be a basis for denying the motion for a bill of particulars.").

    A defendant is not entitled to a bill of particulars "as a tool … to obtain disclosure of all evidence held by the government before trial." *United States v. Salisbury*, 983 F.2d 1369, 1376 (6th Cir. 1993). Nor is it "intended as a means of learning the government's evidence and theories." *Musick* 291 F. App'x at 724 (internal quotation marks and citation omitted). *See also United States v. Jones*, 678 F. Supp. 1302, 1304 (S.D. Ohio 1988) ("A bill of particulars is not available to obtain detailed disclosure of the government's evidence or theories prior to trial."). Yet another "improper use for a bill" is "seeking the precise manner each charged crime is alleged to have been committed." *Foster*, 2022 WL 3378639, at *3 (citing *Salisbury*, 983 F.2d at 1375).

    For the many reasons discussed above, the Superseding Indictment sufficiently apprises the defendant of the nature of the charges against him, protects him from Double Jeopardy exposure, and allows him to prepare a defense. He has therefore failed to establish that a bill of particulars is warranted. *Salisbury*, 983 F.2d at 1375 ("A court does not abuse its discretion by denying a bill of particulars in light of a detailed indictment.") (citing *United States v. Magar*, 801 F.2d 1477, 1503 (6th Cir. 1986)). More importantly, each of the eight items that the defendant claims the government must specifically articulate in a bill of particulars seeks to uncover "the precise manner each charged crime is alleged to have been committed." *Foster*, 2022 WL 3378639, at *3. A defendant is not entitled to such information, through a bill of particulars or otherwise. *Id.*

Even if the Indictment did leave any ambiguity about the charges, a bill of particulars is inappropriate because of the voluminous discovery the government has provided, which leaves no question about what acts the government alleges the defendant committed.  *See United States v. Page*, 575 F. App'x 641, 643 (6th Cir. 2014) (request for bill of particulars was properly rejected where defendant had received "ample discovery"); *Musick*, 291 F. App'x at 725 (where defendant "received access to all of the pertinent information necessary to prepare his defense and avoid unfair surprise" denial of bill of particulars was proper).  As described in the Government's Response to the Defendant's Discovery Request (Doc. #45, Response), through pretrial discovery, the government has provided the defendant with approximately 66 FBI reports,[6] which extensively document the investigation and forensic analysis conducted in this case and provide the file names and descriptions of every image and video relevant to the charges.  (Docs. #45-1 through #45-6, Exhibits A- F).  Further, the defense has been given access to the full forensic extractions of the defendant's devices, including all visual depictions the defendant created or caused to be created, as well as the relevant portions of the extractions of the victims' devices.  More than that, on at least two occasions, FBI agents have sat with the defense team to review the forensic extractions at FBI offices and explained to counsel where the most significant pieces of evidence were recovered, why those evidentiary items are believed significant, and whether certain evidence the defense sought actually exists. The government has gone beyond the requirements of Rule 16 and has provided the defendant with ample information to allow him to meet the charges against him.  He has provided no basis for this Court to issue a bill of particulars, and his motion requesting such should be denied.

---

[6] As of the date of this filing, additional FBI reports and redacted forensic extraction reports have been turned over to the defense.

**III.** **The Charges in the Superseding Indictment Are Not Duplicitous or Multiplicitous.**

      The defendant's second pending motion to dismiss (Doc. # 57) requests that the court dismiss Count One and Count Two as duplicitous because each charges a completed crime and attempted crime and dismiss Counts One through Eight as multiplicitous because they rest on the same conduct. Neither claim has merit.

      A. *Neither Count One Nor Count Two Is Duplicitous*.

      "An indictment is duplicitous if it sets forth separate and distinct crimes in one count." *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007). The primary concern with a duplicitous indictment is that it may deprive a defendant of his right to a unanimous verdict. *Id.* That is, if a single count contains two offenses, "a jury might return a guilty verdict on the single count submitted to them without all twelve jurors agreeing that the defendant committed either of the offenses charged within that count." *Id.* If a defendant establishes pretrial that counts are duplicitous, such is "not necessarily fatal to an indictment." *United States v. Shumpert Hood*, 210 F.3d 660, 663 (6th Cir. 2000). Rather than dismissal, a court may "require the government to elect the count or charge within the count upon which it will rely," or "may particularize the distinct offense charged in each count in its jury instruction." *Id*. (internal quotations and alteration omitted).

      Offenses are typically considered separate for duplicity purposes "if each requires proof of an additional fact that the other does not." *United States v. Davis*, 306 F.3d 398, 416 (6th Cir. 2012). An offense and a lesser-included offense are not considered separate offenses for duplicity purposes, however, and both can be contained within a single count of an indictment. *United States v. Ramamoorthy*, 949 F.3d 955, 960–61 (6th Cir. 2020). Because the elements of a lesser included offense are identical to part of the elements of a greater offense, a juror who votes

to find a defendant guilty on the greater offense necessarily finds him guilty of the lesser included offense. *Id.*

An attempt is a lesser-included offense of the completed crime, and thus not duplicitous, if the completed crime is a specific intent crime. *See Ramamoorthy*, 949 F.3d at 960–61. This is because both the attempt and the completed crime require proof that the defendant acted with specific intent. As such, the attempted crime does not require proof of any additional fact not required to prove the completed crime. *See id.* (holding indictment that charged attempted and completed sexual abuse in the same count was not duplicitous because attempt was a lesser-included offense); *United States v. D'Amico*, 496 F.3d 95, 99 (1st Cir. 2007) (holding indictment charging attempted and completed Hobbs Act extortion in a single count was not duplicitous).

The analysis is different, however, for general intent crimes. In that situation, the attempted crime requires proof of an additional element—*i.e.*, that the defendant acted with a specific intent—that is not a required element of the completed crime. *See United States v. Ramirez-Martinez*, 273 F.3d 903, 913–14 (9th Cir. 2001); *see also D'Amico*, 496 F.3d at 99 (distinguishing general and specific intent crimes for duplicity purposes).

Here, Counts One and Two are not duplicitous because attempted sexual exploitation of a minor is a lesser included offense of sexual exploitation of a minor under 18 U.S.C. § 2251(a). Sexual exploitation of a minor is a specific-intent crime that requires that a defendant act "with the intent that such minor engage in[] any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a); *see also United States v. Frei*, 995 F.3d 561, 566 (6th Cir. 2021) ("§ 2251 is a specific-intent crime, which requires that the defendant must purposefully or intentionally commit the act that violates the law and do so intending to violate the law."). As such, both attempted sexual exploitation and completed sexual

exploitation require proof of a specific intent to commit the crime and at least a substantial step toward completion. And because attempted sexual exploitation does not require proof of any additional fact, it is not a separate offense for duplicity purposes and is properly combined with the completed sexual exploitation in Counts One and Two. *Ramamoorthy*, 949 F.3d at 960–61.

While defendant relies on several (mostly out-of-circuit) cases in his motion, those cases are all inapposite because they involved general intent crimes and specific intent attempts charged in the same count. *See, e.g.*, *United States v. Varela*, No. CR-21-955, 2022 WL 2187746, at *6–7 (D. Ariz. June 17, 2022) (distinguishing between general intent completed assault and specific intent attempted assault under 18 U.S.C. § 113(a)); *Ramirez-Martinez*, 273 F.3d at 914 (holding indictment was duplicitous because "attempting to transport illegal aliens in violation of [18 U.S.C.] § 1324(a)(1)(A)(ii) requires a showing of specific intent," while actual (completed) transportation is a general intent crime). But because Counts One and Two charge a specific intent crime, *Ramamoorthy* applies and the counts are not duplicitous.

B. Counts One Through Eight Are Not Multiplicitous.

While duplicity is the charging of multiple offenses in a single count, multiplicity presents the inverse issue: the "charging of a single offense in more than one count in an indictment." *United States v. Myers*, 854 F.3d 341, 355 (6th Cir. 2017). A multiplicitous indictment raises double jeopardy concerns because it "may result in a defendant being punished twice for the same crime." *Id.* It is well-established, however, that a single transaction or course of conduct can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause. *Albernaz v. United States*, 450 U.S. 333, 344 n.3 (1981).  To determine whether charges under separate statutes are multiplicitous, a court must "analyze, under *Blockburger v. United States*, 284 U.S. 299 (1932), whether each charge requires proof of a fact

27

that the other charge does not; if each charge does, then the charges accuse different crimes and are therefore not multiplicitous." *Id.*; *see also United States v. DeCarlo*, 434 F.3d 447, 455–56 (6th Cir. 2006) (noting that "the Double Jeopardy Clause is not violated merely because the same evidence is used to establish more than one statutory violation if discrete elements must be proved in order to make out a violation of each statute").

"Where an indictment includes more than one count charging the same statutory violation, the question is whether Congress intended the facts underlying each count to constitute a separate unit of prosecution." *United States v. Richards*, 659 F.3d 527, 547 (6th Cir. 2011). "The inquiry as to what constitutes the correct unit of prosecution focuses in part on the identification of the key element of the federal offense." *United States v. Esch*, 832 F.2d 531, 541 (10th Cir. 1987) (holding that unit of prosecution for 18 U.S.C. § 2251(a) is each use of a minor to engage in sexually explicit conduct, and that separate explicit photographs, even if taken sequentially, can be charged as distinct offenses because "[e]ach photograph depend[s] upon a separate and distinct use of the children").

The Superseding Indictment here does not raise any multiplicity concerns because, under the *Blockburger* test, each of the counts requires proof of a fact that the other counts do not. For instance, while the Indictment includes four counts of sexual exploitation of a minor, each count involves, and requires proof of, a different use of a minor. Count One involves the defendant's use of Jane Doe #1 between December 2018 and January 13, 2019 that culminated in Jane Doe #1 creating one or more digital image files depicting herself engaged in the lascivious exhibition of her genitalia and pubic area. (Doc. # 46, Superseding Indictment.) Count Two, in contrast, involves a different minor (Jane Doe #2) on a different date (January 15, 2019) and the creation of different child pornography (one digital image depicting Jane Doe #2 engaged in the

28

lascivious exhibition of her genitalia and pubic area). (*Id.*) Counts Three and Four involve yet a different phase of the defendant's activity related to the production of child pornography: his attempts, over the course of a week, to coerce both minor victims to transmit live visual depictions of themselves engaged in sexually explicit conduct. (*Id.*)

The defendant claims that Counts Two and Four are multiplicitous because they both involve the attempted sexual exploitation of Jane Doe #2. (Doc. 57 at 694.) Not so. As set forth in the Indictment, each count requires proof of one or more facts that the other does not. Moreover, each § 2251(a) count represents a separate offense because the appropriate unit of prosecution under § 2251(a) is the use of a minor to engage in sexually explicit conduct for the purposes of creating a visual depiction. *See Esch*, 832 F.2d at 542 (holding multiple photographs taken in single session were properly charged as separate counts); *United States v. Tashbrook*, 144 F. App'x 610, 614 (9th Cir. 2005) (holding two photographs of a minor taken in a single photo session constituted separate violations); *United States v. Smith*, 919 F.3d 1, 16 (1st Cir. 2019) (six separate videos defendant produced over the course of an hour properly charged in six separate counts). Count Two requires proof that defendant used (or attempted to use) the minor victim on or about January 15, 2019 to create "one digital image depicting Jane Doe #2 engaged in the lascivious exhibition of the genitalia and pubic area." (Doc. # 46, Superseding Indictment.) In contrast, Count Four represents a separate attempted use of Jane Doe #2 and requires proof that the defendant attempted to use her over the course of approximately one week to have her "transmit[] a live visual depiction" of herself in engaged in sexually explicit conduct. (*Id.* at 571.) As such, the different uses are properly charged in separate counts.

The defendant also asserts that Counts One through Eight are multiplicitous because they involve "the same conduct, communications, and small number of images." (Doc. # 57, mot. to

dismiss at 694.) This argument mischaracterizes the Indictment and misstates the governing law.

While it is true that all counts of the Indictment relate to a common scheme—i.e., the

defendant's persistent attempts over multiple months to procure obscene and pornographic

material from A.M. and her two daughters—the counts are properly divided into separate units of

prosecutions, as noted above, based on the different uses or attempted uses of the minor victims.

The defendant also mistakenly claims that an indictment cannot charge a defendant "with

multiple offenses based on the same events." (Doc. # 57, Motion at 695.)[7] But "it is well settled

that a single transaction can give rise to distinct offenses under separate statutes without violating

the Double Jeopardy Clause," provided the statutes set forth different crimes under the

*Blockburger* test. *Albernaz*, 450 U.S. at 344 n.3. As such, while defendant's conduct between

January 14 and January 21, 2019, gives rise to separate charges for attempted sexual exploitation

of a minor in violation of 18 U.S.C. § 2251(a), attempted coercion of a minor in violation of 18

U.S.C. § 2422(b), and making an interstate notice for child pornography in violation of 18 U.S.C.

§ 2251(d), none of those charges are multiplicitous because each statute contains an element that

the others do not. Attempted exploitation of a minor requires proof that the defendant attempted

to use a minor to engage in sexually explicit conduct for the purpose of producing a visual

depiction, which is not an element of the other charges. *See* 18 U.S.C. § 2251(a). And unlike

§ 2251(a) and § 2422(b), § 2251(d) requires proof that a defendant "made, printed or published

any notice or advertisement." Finally, the § 2422(b) counts also require proof of an element that

the other counts do not: namely, that the defendant attempted to persuade a minor "to engage in

---

[7] Defendant cites to *Ball v. United States*, 470 U.S. 856, 860 (1985) for this proposition. That case, however, dealt with a straightforward application of the *Blockburger* test and held that a defendant could not be sentenced for both receiving a firearm under 18 U.S.C. § 922(h) and possessing a firearm under 18 U.S.C. § 1202(a)(1) because "proof of illegal receipt of a firearm necessarily includes proof of illegal possession of that weapon." *Id.* at 862.

sexual activity for which any person can be charged with a criminal offense." (Doc. # 46, Superseding Indictment.) Accordingly, the charges under these three statutes constitute different offenses under *Blockburger* and are not multiplicitous, even if based on the same underlying evidence. *See, e.g.*, *United States v. Hart*, 635 F.3d 850, 858 (6th Cir. 2011) (holding 18 U.S.C. §§ 2422(b) and 2251(a) are different offenses that do not implicate Double Jeopardy Clause); *United States v. Lee*, 29 F.4th 665, 673 (11th Cir. 2022) (holding 18 U.S.C. §§ 2251(a) and 2251(d) are not the same offense under *Blockburger* test).

The same holds true for Counts One (sexual exploitation of a minor) and Seven (receipt of child pornography). Both counts involve pornographic images of Jane Doe #1 that the defendant directed her to take and send to him. But because each count requires proof of an additional fact that the other does, the counts are not multiplicitous and charging both does not violate the Double Jeopardy Clause. *See United States v. Kniffley*, 729 F. App'x 406, 410–11 (6th Cir. 2018) (holding convictions for producing child pornography under 18 U.S.C. § 2251(a) and distributing and possessing the same pornographic images under 18 U.S.C. § 2252A did not violate Double Jeopardy Clause).

In any event, even if any of the charges were multiplicitous, dismissal of counts at this stage is premature and not required. The Supreme Court has long recognized "the Government's broad discretion to conduct criminal prosecutions, including its power to select the charges to be brought in a particular case." *Ball v. United States*, 470 U.S. 856, 860 (1985). As such, even where multiple punishments for the same offense would violate the Double Jeopardy Clause, a

prosecution on the multiplicitous charges may generally proceed provided the counts are merged prior to sentencing. *See id.*; *see also United States v. Reed*, 639 F.3d 896, 904 n.6 (6th Cir. 1981).

While a district court may, in its discretion, require the prosecution to elect between multiplicitous counts pretrial especially "when the mere making of the charges would prejudice the defendant with the jury," *United States v. Throneburg*, 921 F.2d 654, 657 (6th Cir. 1990), the defendant would not suffer any prejudice here. While the defendant claims he would be prejudiced by having to defend against eight child pornography counts, the Sixth Circuit has stated that a "defendant seeking to show prejudice must show more than the mere knowledge on the part of the jury that the defendant faced multiple charges. Indeed, if the jurors' knowledge of multiple charges sufficed, the exception would swallow the rule: every multiplicitous indictment would result in trial prejudice." *Maxwell v. United States*, 617 F. App'x 470, 475 (6th Cir. 2015). Here, the counts represent separate offenses under *Blockburger* and, in any event, do not stem from a single incident but reflect the defendant's persistent efforts over multiple months to solicit and receive multiple pieces of child pornography from two different underage victims. Under these circumstances, defending against eight counts would not prejudice the defendant.

## IV.   18 U.S.C. § 1462 Is Constitutional as Applied to Defendant.

The defendant moves to dismiss Count Nine on constitutional grounds, alleging that 18 U.S.C. § 1462 as applied violates his constitutional rights under the First and Fifth Amendments. (Doc. # 59, Motion at 719–24.) Because the defendant's as-applied challenge requires a fact-specific inquiry, his motion is premature and is better resolved post-trial. *See, e.g.*, *United States v. Bychak*, 441 F. Supp. 3d 1003, 1013–14 (S.D. Cal. 2020) (holding pretrial as-applied vagueness challenge to be premature and collecting cases). To the extent the Court elects to consider the as-applied challenge pretrial, it should deny the motion because the defendant has

32

neither a First Amendment nor substantive due process right to receive, transport, or distribute obscene material.

A. *Defendant Does Not Have a First Amendment Right to Receive, Transport, or Distribute Obscene Material in Violation of 18 U.S.C. § 1462.*

The Supreme Court has repeatedly held that "obscene material is unprotected by the First Amendment" and that the state has a "legitimate interest in prohibiting dissemination or exhibition of obscene material when the mode of dissemination carries with it a significant danger of offending the sensibilities of unwilling recipients or of exposure to juveniles." *Miller v. California*, 413 U.S. 15, 19 (1973); *see also Roth v. United States*, 354 U.S. 476, 485 (1957) (recounting history of First Amendment and holding that "obscenity is not within the area of constitutionally protected speech or press").

In *Stanley v. Georgia*, the Supreme Court carved out a limited exception to the general rule that obscenity is not constitutionally protected, holding that a state statute prohibiting private possession of obscene material violated the First Amendment. 394 U.S. 557, 559 (1969). The *Stanley* Court expressly limited its holding to the possession of obscene material, not its distribution, which it noted "is subject to different objections." *Id.* at 567. An unbroken line of Supreme Court cases since *Stanley* have cabined *Stanley* to mere private possession of obscenity in one's home and confirmed that there is no First Amendment right to receive, transport, or distribute obscenity. *See United States v. Reidel*, 402 U.S. 351, 354–55 (1971) (explicitly rejecting the notion that *Stanley*'s recognition of the defendant's right to possess obscenity meant that "someone must have the right to deliver it to him" through the channels of commerce); *United States v. Thirty–Seven (37) Photographs*, 402 U.S. 363, 376 (1971) ("That the private user under *Stanley* may not be prosecuted for possession of obscenity in his home does not mean that he is entitled to import it from abroad free from the power of Congress to exclude noxious

articles from commerce."); *United States v. 12 200–Foot Reels of Super 8mm. Film*, 413 U.S. 123, 126–30 (1973) (holding that *Stanley* stands only for the proposition that individuals have the right to the privacies of home, and rejecting the argument that Stanley established a right to acquire or possess obscene materials); *United States v. Orito*, 413 U.S. 139, 141 (1973) (holding that *Stanley*'s tolerance of obscenity within the privacy of the home created no "correlative right to receive it, transport it, or distribute it"); *Smith v. United States*, 431 U.S. 291, 307 (1977) ("*Stanley* did not create a right to receive, transport, or distribute obscene material, even though it had established the right to possess the material in the privacy of the home.").

Section 1462 is constitutional as applied to the defendant's conduct here because he did not simply possess obscene materials in the privacy of his home. Rather, he paid a third party both to produce an obscene matter—a live streamed visual depiction of herself engaged in various degrading sex acts—and to transmit that obscene matter to him using an interactive computer service. His reliance on *Stanley* is misplaced because, despite his characterization of his offense, his conduct is not limited to his home and did not involve mere possession. The obscene material was created in the Southern District of Ohio, distributed to him at his request using channels of interstate commerce, and received by him in a different state, raising the specific dangers of distribution of obscene materials that the Supreme Court has identified. *See Miller*, 413 U.S. at 19. While it is true that the defendant recorded the obscene material and continued to privately possess it afterwards, he is charged with transportation of the obscene material, not his ongoing possession. Because the defendant had no First Amendment right to receive, transport, or distribute the obscene matter, his prosecution under 18 U.S.C. § 1462 is constitutional. *Accord United States v. Whorley*, 550 F.3d 326, 332–34 (4th Cir. 2008) (rejecting facial and as applied constitutional challenge to § 1462).

34

The defendant contends that *Stanley* should apply because the video call was private insofar as only he an A.M. were on the call and the obscene material was distributed only to him. The Supreme Court has rejected this argument, holding that "the privacy of the home relied on in *Stanley*" does not equate "with a zone of privacy that follows a distributor or a consumer of obscene materials whatever he goes." *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 66 (1973). Moreover, it addressed this precise argument within the context of § 1462, holding the statute constitutional regardless of whether the distribution occurs publicly or privately:

> [W]e cannot say that the Constitution forbids comprehensive federal regulation of interstate transportation of obscene material merely because such transport may be by private carriage, or because the material is intended for the private use of the transporter. That the transporter has an abstract proprietary power to shield the obscene material from all others and to guard the material with the same privacy as in the home is not controlling. Congress may regulate on the basis of the natural tendency of material in the home being kept private and the contrary tendency once material leaves that area, regardless of a transporter's professed intent.

*Orito*, 413 U.S. at 143; *see also United States v. Thomas*, 74 F.3d 701, 710 (6th Cir. 1996) (rejecting argument that obscenity statutes are unconstitutional under *Stanley* as applied to private internet transmissions of obscene material that defendants claimed "never left their home"). The defendant here stepped outside of the privacy of his home to solicit, pay for, and receive obscene material via an interactive computer service. That conduct is not protected by the First Amendment.

The defendant's motion asserts that § 1462 is nonetheless unconstitutional as applied to him because the obscene material involved a live visual depiction that involved him instructing A.M. as to the specific obscene acts he wished her to perform in exchange for money. It is well-established, however, that the First Amendment does not bar the government from prohibiting live displays of obscenity or prostitution among consenting adults. *See Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 66–69 (1973); *Cooper v. Parrish*, 203 F.3d 937 (6th Cir. 2012). That the

defendant played a role in the creation of the obscene material here does not create a First Amendment right to distribute, transport, or receive the obscene material. Indeed, the defendant's proposed rule would perversely incentivize obscenity distributors and recipients to play an active role in the creation of obscene materials to immunize themselves from prosecution for receipt or distribution of the obscenity.

B. *Defendant Does Not Have a Substantive Due Process Right to Receive, Transport, or Distribute Obscene Material in violation of 18 U.S.C. § 1462*.

The Due Process Clause guarantees some rights not mentioned in the Constitution. Those rights, however, must be "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (quotations omitted). In *Lawrence v. Texas*, the Supreme Court struck down an anti-sodomy law under the Due Process Clause because the statute "furthered no legitimate state interest which can justify its intrusion into the personal and private life of the individual." 539 U.S. at 578.

As every court to address the issue has found, however, *Lawrence* does not extend a substantive Due Process Right to receive, transport, or distribute obscene material. *See United States v. Extreme Assocs., Inc.*, 431 F.3d 150, 156–59 (3d Cir. 2005); *United States v. Coil*, 442 F.3d 912, 915 (5th Cir. 2006); *United States v. Gravenhorst*, 190 F. App'x 1, 4 (1st Cir. 2006); *United States v. Little*, 365 F. App'x 159, 162 (11th Cir. 2010); *see also Whorley*, 550 F.3d at 343 (Jones, J. concurring) (noting there is no support in the law for the proposition that "private e-mails between consenting adults should at least be accorded the substantive due process privacy protections that obscene materials viewed privately and sexual acts between consenting adults are provided"). Nothing in *Lawrence* undermines or calls into question the Supreme Court's post-*Stanley* line of cases holding there is no protected privacy interest in the

transportation of obscene materials. *See Extreme Assocs., Inc.*, 431 F.3d at 156–59. While *Lawrence* found that Texas had no legitimate state interest in regulating private sexual activities within the privacy of the home, the Supreme Court has repeatedly recognized a legitimate state interest in regulating the receipt, transportation, and distribution of obscenity given the dangers that conduct poses. *See Orito*, 413 U.S. at 143–44. And while individuals have a historically-protected interest in private, consensual sexual encounters, there is no correlative right to pay for the creation and distribution of obscene material, much less a right that is "deeply rooted in this Nation's history and tradition," and "implicit in the concept of ordered liberty."

Finally, the facts of the present case are clearly distinguishable from *Lawrence*. The *Lawrence* majority opinion specifically highlighted that the case did not "involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused." 539 U.S. at 578. Nor did that case "involve public conduct or prostitution." *Id.* In contrast, the anticipated evidence here will show that the defendant sought out A.M. through a public website for prostitution, that he sought and received obscene material through interstate commerce, and that he coerced and extorted A.M. in the course of their relationship, such that she could not easily refuse consent. As such, even if *Lawrence*'s substantive due process right extended beyond private sexual conduct within a person's home, it would not reach defendant's conduct here.

## **CONCLUSION**

The Superseding Indictment satisfied all constitutional requirements, and the defendant has failed to establish that Counts One through Eight are duplicitous or multiplicitous. He has also failed to establish that Count Nine is unconstitutional as applied to him. As such, the

government respectfully submits that all the defendant's Motions to Dismiss should all be denied.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

s/Heather A. Hill
HEATHER A. HILL (0100920)
KEVIN KOLLER (NY 5180609)
EMILY CZERNIEJEWSKI (IL 6308829)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Office: (614) 469-5715
Fax: (614) 469-5653
E-mail: Heather.Hill@usdoj.gov
E-mail: Kevin.Koller@usdoj.gov
E-mail: Emily.Czerniejewski@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion in Opposition was served this 20th day of February, 2023, electronically on the attorneys for defendant Bernhard Jakits.

s/Heather A. Hill
HEATHER A. HILL (0100920)
Assistant United States Attorney