IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No: 2:22-CR-194 |
| v. : | |
| : | JUDGE EDMUND A. SARGUS |
| BERNHARD JAKITS : | |

## MEMORANDUM OF THE UNITED STATES REGARDING OBSCENITY EVIDENCE

On March 9, 2023, the Court issued an Order denying the defendant's various motions to dismiss the Superseding Indictment but granting the defendant's motion to sever Count Nine, which charges him with interstate transportation of obscenity, from Counts One through Eight, which charge him with various child exploitation and child pornography offenses. (Doc. # 75, Severance Order.) The Court's Order further directed the parties to submit briefing on the admissibility of evidence pertaining to Count Nine during the trial on Counts One through Eight. (*Id*.) Pursuant to that Order, the government hereby provides notice to the Court and counsel that, during the trial on Counts One through Eight, it does not intend to admit any actual visual depictions of bestiality or other obscenity that were located on the defendant's devices. As described below, the government will only seek to admit: 1) sufficient background evidence regarding the defendant's relationship with A.M. to explain how he came to be involved with her two minor daughters; and 2) evidence regarding the defendant's course of conduct with A.M. and two other women that he contacted online—to wit, that he paid and/or offered payment to these women in exchange for them engaging in sexually explicit conduct on live video chats with him, and that he recorded and stored these videos on his electronic devices—as is necessary to

establish the defendant's intent and *modus operandi* in his communications with Jane Doe #1 and Jane Doe #2.

## BACKGROUND

The government fully described the facts underlying the charges in this case in its consolidated response to the defendant's motions to dismiss and incorporates those details herein by reference. To briefly summarize, Count Nine of the Superseding Indictment is based on the defendant's commercial sexual relationship with A.M., an adult female, which involved the defendant paying A.M. to perform degrading and obscene acts during video calls via Google Duo. The defendant recorded these video calls, and those recordings were found on his devices in a Photo Vault application saved in folders under A.M.'s name or nicknames or in folders titled with her daughter's name. The numerous recordings, specifically of A.M., totaled approximately three hours and a majority of those videos were created in November and early to mid-December 2018, when A.M. was staying at a residence in West Virginia. Most of the videos depicting A.M. involved sex acts or attempted sex acts with a dog. The video that forms the basis of Count Nine was created on or around December 24, 2018, and is approximately 20 minutes in length. It does not involve bestiality. A.M.'s children are referenced, either by Jakits or A.M., on four different recorded video calls (including the Count Nine video) that were recovered from the Photo Vault application on the defendant's devices and in his iCloud.

Also located in the Photo Vault application of the defendant's devices, as well as in his iCloud account and on other devices, were nude images of Jane Doe #1 and Jane Doe #2, who are A.M.'s daughters, and both of whom were minors in 2018 to 2019. Forensic data from Jane Doe #1's phone indicates that these photos were taken and sent to the defendant in late December 2018 and early January 2019. The photos were taken at the defendant's request, and

2

he also sought to engage in a video chat with the two minor girls via Facetime, another video chat platform. That Facetime call never occurred because the girls did not feel comfortable with what the defendant was asking them to do, despite his promises of large sums of money and/or other payment, including plane tickets to Florida.

The Photo Vault application also contained video files and images related to four other adult women, which were organized in a similar fashion to the files related to A.M. and the two minor victims (i.e., saved in folders that identified the women by their names or nicknames).[1] The evidence relating to two of those women, C.A. and M.P, consists of videos and/or images, texts and/or emails, and Western Union payments that show the defendant engaging in a similar course of conduct toward them as he did towards A.M.—i.e., offering them money to engage in sexually explicit conduct on live video chats with the defendant over the internet, which the defendant recorded and saved. In many of the videos, the defendant directed the women to perform sex acts with dogs or other animals. Forensic data indicates those videos were created between 2017 and 2018, and the defendant continued to communicate with C.A. through 2019 and much of 2020.

## ANALYSIS AND ARGUMENT

As an initial matter, regardless of severance, the government never intended to play hours' worth of any obscenity videos. As indicated above, the video that forms the basis of Count Nine is approximately 20 minutes long and is the only visual depiction the government intended to introduce regarding Count Nine. While the general nature and content of the other visual depictions that the defendant received and recorded of A.M. are relevant contextual

---

[1] The Photo Vault application also included a folder labeled "Animal Sex" that contained 148 images of adult women performing oral and vaginal sex with various animals. Unlike the folders related to the specific women, there is no indication that the defendant was involved in the production of these images and, due to that distinction, the government does not intend to introduce evidence of such images at trial.

3

evidence of the relationship between the two and of the defendant's intent during his communications with the minor victims, the government at no point intended to subject a jury to videos of A.M. engaging in bestiality once it was determined that venue for those videos does not exist in this district.

Furthermore, the government understands and will abide by the rationale underlying the Court's Severance Order. As such, the government will not seek to publish to the jury any visual depictions involving adult obscenity in the trial on Counts One through Eight. However, as explained in the government's prior briefing and during oral argument, the existence of the relationship between the defendant and A.M. is essential *res gestae* evidence that explains how A.M.'s daughters first came to interact with the defendant. Furthermore, because many of the child exploitation crimes with which the defendant is charged are attempts, his intent will necessarily be a significant issue for the government to prove at trial. The nature of the acts that the defendant required A.M. to perform is significant evidence of his intent during his communications with Jane Doe #1 and Jane Doe #2. Similarly, the defendant's communications with C.A. and M.P., during which he also engaged in sexually explicit video chats and/or paid the women for sending him obscene images or videos, are indicative of his intent and his *modus operandi* relative to his intent with the minor victims. Thus, the following evidence is admissible as *res gestae* or pursuant to Rule 404(b).[2]

- Testimony regarding Jane Doe #1's and/or Jane Doe #2's knowledge of the relationship between A.M. and the defendant;

- Testimony about the evidence recovered from the devices searched that corroborates the existence and nature of the relationship between the defendant

---

[2] Prior to the Court's Severance Order, the government intended to file a notice related to any/all evidence it would seek to admit as *res gestae* or pursuant to Rule 404(b). The government limits this briefing to the issue the Court requested, i.e. the admissibility of obscenity-related evidence, and will file a separate *res gestae*/other acts notice related to any evidence not pertaining to that issue pursuant to the schedule outlined in the Trial Order.

and A.M. and defendant's knowledge of the minor victims; and

- Testimony about the evidence recovered from the defendant's devices related to his communications and course of conduct with two other adult women.

The above-described evidence is admissible as inextricably intertwined with evidence of the charged offenses, i.e. *res gestae*, and pursuant to Federal Rule of Evidence 404(b).

1. <u>Evidence related to defendant's interactions with A.M. immediately prior to and during the time period of the charged offenses is admissible as relevant *res gestae* evidence.</u>

Background or *res gestae* evidence is admissible if it is "a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (internal citation omitted). Such evidence is admissible, not because it falls outside of Rule 404(b)'s propensity bar, but because it "put[s] the charges in the appropriate context." *United States v. Gibbs*, 979 F.3d 416, 424 (6th Cir. 2015). To be admissible as *res gestae* evidence, the evidence "must have a causal, temporal, or spatial connection with the charged offense." *United States v. Zulawski*, No. 20-5577, 2022 WL 247742, at *10 (6th Cir. Jan. 27, 2022) (quotation omitted). Conduct that "is inextricably intertwined with the charged offense" is admissible as *res gestae* evidence regardless of the "lawfulness of the underlying conduct." *Id.*

Here, the evidence relating to the defendant's relationship with A.M. is necessary to provide the appropriate context of the charged offenses. It is through his relationship with A.M. that the defendant both learned about the minor victims and gained access to them. The nature of the defendant's relationship with A.M.—specifically that he met her online and paid her money to engage in sexually explicit conduct that she transmitted live to him over the internet—is probative of the charged offenses and necessary to explain the circumstances behind his interactions with the minor victims, at least one of whom was aware of the relationship between

5

him and their mother.

The evidence related to the defendant's interactions with A.M. also has a close causal, temporal, and spatial connection with the charged offenses. The evidence is directly linked to the charged offenses because his interactions with A.M. and the minor children form part of a single scheme in which the defendant sought to procure obscene and pornographic material from members of the same family. The connection is further underscored by the close temporal proximity—his interactions with A.M. occurred in November and December 2019 and his interactions with the minors occurred in December 2019 and January 2020—and the close spatial proximity—A.M. and the minor victims were at all relevant times either in Martin's Ferry, Ohio or just over the border in West Virginia.

The Sixth Circuit's decision in *United States v. Zulawski*, 2022 WL247742, is instructive. There, the defendant, who was on a week-long deployment in Lexington, Kentucky, spent his evenings in his hotel using his cell phone to solicit sexual encounters online. *Id.* at *1. During this time, he engaged in several online chats with multiple people. One of chats was with an undercover officer who was posing as a mother of two minors interested in "taboo/incest." Based on his interactions with the undercover officer, defendant was charged with attempting to entice a minor to engage in unlawful activity in violation of 18 U.S.C. § 2242(b). At trial, the district court admitted the defendant's chats with the other unidentified individuals as *res gestae* evidence. The Sixth Circuit affirmed on appeal, noting that "these chats served to complete the story behind [defendant's] charged offense." *Id.* at *10–11. Among other things, the timing and explicit conduct of the defendant's messages suggested he was "singularly focused on finding sexual partners." *Id.* The fact that the defendant's other chats may have been with "consenting adults" did not affect this conclusion as the lawfulness of the underlying conduct does not matter

to the *res gestae* analysis.

So too here. As in *Zulawski*, the evidence concerning the defendant's relationship with A.M. is necessary to complete the story. It shows that the defendant was focused on obtaining visual depictions of sexually explicit conduct over the internet in exchange for money (or at least offers of payment). The connection between the *res gestae* evidence and charged offenses is stronger here than in *Zulawski* given that A.M. is related to the victims and the defendant's interactions with A.M. were the causal link that connected him to the minor victims.

As such, while the government will not seek to play any of the videos of A.M. at trial, it intends to introduce evidence in the form of testimony relating to the minor victims' knowledge of the relationship between the defendant and A.M., evidence relating to the timing and nature of the communications between the defendant and A.M.—including that he offered her money to engage in certain sexually explicit conduct[3] during online video chats, which he recorded and stored on his digital devices—and evidence relating to the defendant's knowledge of A.M.'s minor children, including the specific references to the children on the recorded videos.

2. Rule 404(b) permits introduction of evidence relating to videos of A.M. and two other adult women found on the defendant's devices as relevant to prove intent, *modus operandi*, and identity.

Federal Rule of Evidence 404(b) prohibits introduction at trial of evidence of other crimes or wrongful acts "to prove the character of a person in order to show action in conformity therewith." But "other acts" evidence is admissible for *any other* relevant, non-propensity reason, including to prove motive, opportunity, intent, knowledge, identity, and so forth. The Sixth Circuit regularly upholds the admission of other acts evidence under Rule 404(b), where

---

[3] Unless the door is opened by questions, argument, or testimony introduced by or on behalf of the defendant, the government does not anticipate eliciting specific details regarding the sexual acts that A.M. performed for the defendant, other than, for example, that those acts generally involved bestiality and/or the insertion of objects.

the evidence is not introduced to show the defendant's propensity or general bad character. *See, e.g.*, *United States v. Bell*, 516 F.3d 432 (6th Cir. 2008); *United States v. Johnson*, 27 F.3d 1186 (6th Cir. 1994). Importantly, Rule 404(b) is a rule of "inclusion rather than exclusion, since only one use [of prior bad acts] is forbidden and several permissible uses of such evidence are identified." *United States v. Vance*, 871 F.2d 572, 575 (6th Cir. 1989); *see also United States v. Cummins*, 969 F.2d 223, 228 (6th Cir. 1992) (same). Thus, the Rule's list of admissible purposes for evidence of other bad acts is illustrative, not exhaustive. *United States v. Blakeney*, 942 F.2d 1001, 1018 (6th Cir. 1991).

The Sixth Circuit outlined three steps to assessing admissibility of "other acts" evidence under 404(b):

> First the district court must decide whether there is sufficient evidence that the other act in question actually occurred. Second . . . the district court must decide whether the evidence of the other act is probative of a material issue other than character. Third . . . the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003). Other acts evidence need not be proven beyond a reasonable doubt, "rather, that proof must merely be sufficiently compelling such that 'the jury can reasonably conclude that the act occurred and that the defendant was the actor.'" *United States v. Carney*, 387 F.3d 436, 452 (6th Cir. 2004) (quoting *Dowling v. United States*, 493 U.S. 342, 348 (1990)).

Here, evidence of the defendant's interactions with A.M. and two other women—namely that he paid them and/or offered payment to them in exchange for them engaging in sexually explicit conduct on live video calls over the Internet which he recorded and saved on his electronic devices—is admissible under these three steps.

First, the evidence recovered from the defendant's devices—to wit, the recordings he

8

made of the live video calls—establishes that the acts in question actually occurred. Moreover, because Jakits himself appears on the recordings related to A.M. and C.A., there is no dispute that he "was the actor." *Carney* 387 F.3d at 452.

Second, evidence about the defendant's course of conduct with the three women is admissible to show his intent to have the minors engage in sexually explicit conduct on the attempted Facetime call as well as his identity and absence of mistake in his dealings with the minor victims. "[W]here there is thrust upon the government, either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b)." *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994). Evidence of other acts is probative of intent under Rule 404(b) when the prior acts "were part of the same scheme or involved a similar *modus operandi* as the present offense." *See United States v. Delaney*, 443 F. App'x 122, 132 (6th Cir. 2011) (quotation omitted). To be admissible, the other acts evidence must be both "substantially similar" to the specific intent offense at issue and "reasonably near in time." *United States v. Bell*, 516 F.3d 432, 443 (6th Cir. 2008). There is no requirement, however, "that the prior act must be identical in every detail to the charged offense." *Zulawski*, 2022 WL 247742, at * 9 (quoting *United States v, LaVictor*, 848 F.3d 428, 447 (6th Cir. 2017)).

Here, Counts Three and Four require the government to affirmatively prove that the defendant acted with the specific intent that the minor victims engage in sexually explicit conduct for the purpose of creating a visual depiction of that conduct when he attempted to have them live video chat with him between January 15 and 21, 2019. Counts Five and Six similarly require the government to prove that the defendant acted with specific intent in attempting to

9

entice the minors to live video chat with him. As such, the defendant's intent is a proper basis to admit other acts evidence in this case.

The defendant's prior acts with A.M. and the two other women are directly probative of his intent in attempting to live video call the minor victims because the prior conduct was part of the same scheme and shared a similar *modus operandi* with the offense conduct. In each situation, defendant promised significant amounts of money for women to engage in sexually explicit conduct on live video chats with him that he recorded. In each situation, the defendant saved digital copies of the sexually explicit conduct in his Photo Vault application in separate folders for each of the women. He also frequently pushed the women to keep producing additional sexually explicit content, offering additional financial incentives. This prior conduct is substantially similar to the charged offenses, in which he offered cash and other incentives to the minor victims to live video chat with him, promised larger and larger payments to induce their consent, and saved sexually explicit depictions of the minors to his Photo Vault applications under named folders. Accordingly, the fact that the defendant directed the other women to engage in sexually explicit conduct on the video chats in exchange for money is probative of his intent that the minor victims engage in sexually explicit conduct when he offered to pay them substantial sums of money to video chat with him. *See United States v. Delaney*, 443 F. App'x 122 (6th Cir. 2011) (holding defendant's interactions with three undercover officers online that followed same pattern of behavior as charged offense were admissible as evidence of intent and identity under Rule 404(b)); *Zulawski*, 2022 WL 247742, at *9; *see also LaVictor*, 848 F.3d at 447.

In addition to being "substantially similar," the prior acts were also "reasonably near in time" to the charged offense conduct. The video chats with A.M. occurred directly before and/or

around the same time the defendant began to solicit sexually explicit content from the minor victims. The forensic evidence also indicates that, while some of the defendant's conduct with the other two women occurred in the year prior to his interactions with A.M. and her daughters, portions of that conduct with those other women continued through the time of the charged offenses. This easily satisfies the test for temporal proximity. *See Zulawski*, 2022 WL 247742, at *9 (noting that 16-month span between prior act and offense conduct "is quite near in time comparatively" and collecting cases showing time gap of three to four years provide sufficient temporal proximity).

At oral arguments on the motions to dismiss, defense counsel argued that evidence related to the defendant's payments to A.M. for producing and transmitting obscene material to him would not be admissible in the child exploitation counts pursuant to *United States v. Brown*, 579 F.3d 672 (6th Cir. 2009). *Brown*, however, addresses only the type of evidence that a jury may consider in determining whether images qualify as child pornography under the *Dost* factors. In that limited context, a jury may not consider "factors that do not relate directly to the taking of the images, such as past bad acts of the defendant, the defendant's possession of other pornography (pornography of another type or of other victims), and other generalized facts that would relate only to the general 'unseemliness' of the defendant." *Id.* at 684.

*Brown* is inapposite here because the government will not offer the defendant's prior acts to establish that certain images are or are not sexually explicit under the *Dost* factors.[4] Rather, the evidence will be offered to establish the defendant's intent in an inchoate crime that did not produce any actual child pornography. The Sixth Circuit has specifically held that *Brown* is inapplicable to such situations and that a jury may consider "a broad range of contextual facts,"

---

[4] The Court can instruct the jury not to consider the prior acts evidence for this purpose if the evidence adduced at trial raises concern about this issue.

11

including the "defendant's objective conduct taken as a whole" to determine whether a defendant charged with attempted sexual exploitation intended to create a lascivious depiction of a minor. *See United States v. Vanderwal*, 533 F. App'x 498 (6th Cir. 2013) ("*Brown* did not involve an attempt to create child pornography, but instead focused on the application of the *Dost* factors to images created by the defendant. These are distinct inquiries, one focuses on a defendant's state of mind when taking action towards a crime that is not consummated, the other is an analysis of whether a given image or video is lascivious. That other child pornography possessed by the defendant is not relevant to determining the lasciviousness of an image created by a defendant, does not mean it is not relevant to his intent in creating that image.").

The defendant's course of conduct with the three adult woman is also admissible under Rule 404(b) to show identity and lack of mistake.[5] That the defendant engaged in the same pattern of behavior with the minors as he did with the other woman using the same phone number is probative of whether it was the defendant who was soliciting and attempting to sexually exploit the minors. *See Delaney*, 443 F. App'x at 132; *United States v. Norris*, No. 1:16-cr-93, 2017 WL 1230466, at *7 (S.D. Ohio Apr. 4, 2017). Moreover, the fact that the videos and images of the women were saved and sorted on his Photo Vault application in a manner similar to how the child pornography was stored rebuts any claim that the defendant either mistakenly received the images of the minor victims or that those images were placed on his devices by mistake. *See United States v. Clark*, 24 F.4th 565, 579 (6th Cir. 2022).

Finally, evidence related to the defendant's course of conduct with A.M. and the two other women is admissible under Rule 403 because the probative value of the evidence is not

---

[5] Relatedly, the defendant's relationship and interactions with A.M. are directly probative of the defendant's knowledge of her daughter's status as minors, as she repeatedly informed him that they were minors or children. Knowledge of age is an element of Counts Five through Eight of the Superseding Indictment.

substantially outweighed by danger of the unfair prejudice. "'Unfair prejudice' . . . does not mean the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986); *see also United States v. Chambers*, 642 F.3d 588, 595 (6th Cir. 2011) ("That evidence may be highly prejudicial does not compel its exclusion; the evidence must be *unfairly* prejudicial.").

The close temporal proximity and significant similarities between the prior acts and the charged offenses make the prior acts evidence very probative of both intent and identity. *See Delaney*, 443 F. App'x 122; *see also United States v. Beckman*, 624 F. App'x 909, 913 (6th Cir. 2015). While the fact that Jakits engaged in conduct similar to the charged conduct with three adult woman is prejudicial, it is not unfairly so. And to the extent the prior conduct involved adult women, it is arguably less prejudicial than the offense conduct. The government acknowledges that the videos depicting bestiality and obscene conduct are highly inflammatory. That is why the government, consistent with the Court's severance Order, does not intend to admit or show any of the bestiality or adult obscenity depictions at the trial on Counts One through Eight.  Thus, any concern about the inflammatory nature of such evidence is mitigated and does not require exclusion of the evidence because the government will introduce only testimony about the general nature of the content of the videos and such specifics as are necessary to establish the defendant's connection to the creation of them.

## **CONCLUSION**

The government understands and intends to abide by the Court's Severance Order and the rationale underlying that Order.  The government submits that the evidence discussed herein is admissible as proper *res gestae* or pursuant to Rule 404(b) and is not unduly prejudicial.  The

government therefore submits that the evidence is admissible in the trial on Counts One through Eight of the Superseding Indictment.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

s/*Heather A. Hill*
HEATHER A. HILL (0100920)
EMILY CZERNIEJEWSKI (IL 6308829)
KEVIN KOLLER (NY 5180609)
Assistant United States Attorneys
303 Marconi Boulevard
Suite 200
Columbus, Ohio 43215
(614) 469-5715
Fax: (614) 469-5653
Heather.Hill @usdoj.gov
Emily.Czerniejewski@usdoj.gov
Kevin.Koller@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum was served this 17th day of March, 2023 electronically upon counsel for all defendants.

s/ *Heather A. Hill*
HEATHER A. HILL (0100920)
Assistant United States Attorney
