**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**UNITED STATES OF AMERICA,**
**Plaintiff,**

**v.**

**Case No. 2:22-CR-194**
**JUDGE EDMUND A. SARGUS, JR.**

**BERNHARD JAKITS,**
**Defendant.**

**OPINION AND ORDER**

This matter is before the Court on Defendant Bernhard Jakits' Motion for Judgment of Acquittal (ECF Nos. 169, 183, 201[1]) the Government's Response in Opposition to Defendant's Motion (ECF No. 189), and Defendant's Reply (ECF No. 202). For the reasons that follow, Defendant's Motions are **DENIED**.

**I.**

On October 11, 2022, the Grand Jury returned an eight-count indictment against Bernhard Jakits, (ECF No. 4), which was superseded January 17, 2023 (ECF No. 46). The superseding indictment included nine counts with regard to two minors who were the alleged victims and were referred to at trial as "Jae" and "Nik." In the indictment, Counts One (regarding Jae) and Two (regarding Nik) charge Defendant with using a minor to produce a visual depiction, in violation of Title 18, United States Code, § 2251(a) and (e). Count Two (regarding Nik) also charges the Defendant with the attempt to use a minor to produce a visual

[1] Defendant's first motion (ECF No. 169) was denied without prejudice from the bench during trial, as discussed herein. Defendant's second motion (ECF No. 201) is a verbatim reproduction of the original filing (ECF No. 183) with the exception that all quotes and citations to the transcript of the trial are conformed to the final transcripts docketed by the Court Reporter.

depiction, in violation of Title 18, United States Code, § 2251(a) and (e). Counts Three (regarding Jae) and Four (regarding Nik) allege attempted sexual exploitation of a minor in violation of 18 U.S.C. §§ 2251(a) and (e); Counts Five (regarding Jae) and Six (regarding Nik) allege attempted coercion or enticement of a minor in violation of 18 U.S.C. § 2422(b); Count Seven (regards both minors) alleges the making an interstate notice for child pornography in violation of 18 U.S.C. §§ 2251(d)(1)(B) and (e); Count Eight (regarding Jae) alleges the receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2), and (b)(1); and Count Nine is transportation of obscene matters in violation of 18 U.S.C. §§ 1462(a).

Trial on the child pornography and child exploitation counts (Counts One through Eight) commenced on May 23, 2023. On May 30, 2023, the jury returned verdicts of guilty on all counts except part of Count 2, finding Defendant guilty only with regard to the attempt charge. (Jury Verdict, ECF No. 172.) At the close of all evidence, Defendant moved for judgment of acquittal as to Counts Five and Six, pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The government responded orally to Defendant's motion on the last day of trial. The Court denied the motion without prejudice (ECF No. 169), inviting Defendant to file a renewed motion if the jury convicted him on Counts Five or Six.

After the jury returned guilty verdicts on Counts Five and Six, Defendant filed the instant motions (ECF Nos. 183, 201), in which he challenges his convictions on all counts, incorporating his argument related to Counts Five and Six made in the first motion (ECF No. 169.)

**II.**

"A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict" and a court "must enter a judgment of acquittal of any offense for

which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c). In assessing a defendant's challenge to the sufficiency of the evidence under Rule 29, the issue a court must determine "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "Reversal of a conviction is warranted only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence." *United States v. Smith*, 749 F.3d 465, 477 (6th Cir. 2014).

In considering a Rule 29 motion, a court "must not 'weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury.'" *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001) (citation omitted). The defendant "bears a very heavy burden" of making his showing. *United States v. Ross*, 502 F.3d 521, 529 (6th Cir. 2007).

**III.**

Defendant argues "with respect to each of the eight counts presented to the jury in the trial that commenced on May 22, 2023, the government did not present sufficient evidence to permit a rational trier of fact to find all of the essential elements of the eight crimes charged beyond a reasonable doubt." (Def's Mot. at 2, ECF No. 201.) The Government disagrees, responding:

> The defendant's current motion largely mirrors the arguments he made to the jury. Essentially, the defendant contends that nude images of the genitalia of a minor female do not constitute the lascivious exhibition of the genitalia or pubic region.
>
> Thus, according to the defendant, evidence that he caused Jae to create such images, received such images, and attempted to cause and coerce Jae and Nik to create additional similar depictions was insufficient to sustain a conviction. The defendant's arguments mischaracterize the evidence and misconstrue the statutes at issue and the case law interpreting them.

(Govt's Resp. at 2–3, ECF No. 189.)

**A. Counts One and Eight**

The jury found Defendant guilty of Count One, which charged him with "using, employing, persuading, inducing, enticing, and coercing 'Jae' to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct from in or about December 2018 through on or about January 13, 2019," and Count Eight, which charged Defendant with "knowingly receiving digital image files of 'Jae' engaged in sexually explicit conduct on or about January 1, 2019 through on or about January 14, 2019." (Doc. #172, Jury Verdict). The jury's guilty verdicts on Counts One and Eight required a finding that the images Jae created and sent to Defendant at his behest depicted her engaged in sexually explicit conduct.

This Court instructed the jury as follows:

> The term "sexually explicit conduct" means actual or simulated:
>
> (1) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; or
>
> (2) masturbation; or
>
> (3) lascivious exhibition of the genitals or pubic area of a person.
>
> In deciding whether an exhibition is "lascivious," you may consider these six factors:
>
> (a) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> (b) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> (c) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

> (d) whether the child is fully or partially clothed, or nude, though nudity is not determinative;
>
> (e) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and
>
> (f) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.
>
> This list is not exhaustive, and an image need not satisfy any single factor to be deemed lascivious. Instead, you must determine whether the visual depiction is lascivious based on its overall content. It is for you to decide the weight or lack of weight to be given any of these factors.

(Jury Instructions, ECF No. 174.)

The factors set out in the jury instructions and copied above as (a) through (f) above are commonly referred to as the *Dost* factors. *See United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009) (citing *United States v. Dost,* 636 F. Supp. 828, 832 (S.D. Cal. 1986)). Defendant points out that of the 23 images of Jae for which evidence was introduced, "none depicted sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse." (Def's Mot. at 4, ECF No. 201.) Defendant concludes:

> Thus, the issue is whether a reasonable jury could find that any of the 23 images about which "Jae" testified (Count 1) or any of the 16 images received by Defendant (Count 8) could be described as depicting a "lascivious exhibition of the anus, genitals, or pubic area." 18 U.S.C. § 2256(2)(A)(v).

*Id.*

Defendant is correct that the issue before the jury was whether Jae was lasciviously exhibiting her genitalia or pubic area. The question now before this Court is whether, after viewing the evidence in the light most favorable to the prosecution, there was substantial and competent evidence to support the jury's finding that Jae was lasciviously exhibiting her genitalia or pubic area. The Court answers that question in the affirmative.

Several of the images shown to the jury depicted nothing but Jae's nude genitalia and others depicted her fully nude while posed in a manner to focus on her genitalia and breasts. Defendant maintains that "[t]he mere display of the nude vagina or pubic area does not equate to 'sexually explicit conduct.'" (Def's Mot. at 5, ECF No. 201) (citing as an example, *United States v. Brown*, 579 F.3d 672, 681-82 (6th Cir. 2009) for the proposition that display of nude genitals and/or pubic area *is not alone* sufficient to satisfy "lascivious" requirement) (emphasis added). Here, however, the display of nude genitals was not the lone evidence presented.

Indeed, following the Sixth Circuit's guidance in considering the *Dost* factors set forth in the jury instructions, the record supports the jury's conclusion that Jae engaged in the lascivious exhibition of the genitalia or pubic area. Even if consideration is limited to the images that depicted only Jae's nude genitalia, government exhibits 2A7, 2A12, 2A15, and 2A20, a rational jury could find the first, third, and fourth factors satisfied, as the focus of those images was nothing except the genitalia, it is unnatural for a child of Jae's age to pose in such a way that a camera is focused on nothing but her genitalia, and Jae's genitalia is depicted completely nude. Further, a reasonable jury could have considered in the sixth factor that the visual depictions were intended or designed to elicit a sexual response in the viewer based on the evidence presented.

That is, the Sixth Circuit analyzed this *Dost* factor and whether the visual depiction is intended or designed to elicit a sexual response in the viewer, weighing the pros and cons of whether a factfinder may properly consider evidence other than the photograph itself, or if it must discern the photographer's intent by examining only the content of the photograph and adopted a "limited context" approach. *Brown*, 579 F.3d. at 683. Under this limited context

approach, it is improper to consider "past bad acts of the defendant, the defendant's possession of other pornography (pornography of another type or of other victims), and other generalized facts that would relate only to the general 'unseemliness' of the defendant." *Id*. However, under the limited context approach, "any statements the defendant made about the images" is an appropriate consideration. *Id.* at 684. That consideration is relevant here and supports the jury's guilty verdicts on Counts One and Eight.

There was evidence presented to the jury of Defendant's written statements to a friend about the pictures he asked Jae to send him. Defendant and his friend discussed at length their sexual interest and attraction to both Jae and her sister, describing sexual acts in which they would like to engage with the minor girls. Defendant claimed to his friend that he paid $500 to spend all night with Jae and other sexually charged language, which a reasonable jury could attribute to an attempt to "elicit a sexual response in the viewer." *Brown*, 579 F.3d at 684.

Next, Defendant suggests that the government's closing arguments regarding the *Dost* factors were conclusory and did not explain why the images of just Jae's nude genitalia or her laying nude on a bed with her legs spread meet any of the factors. But, as the Government correctly notes, its arguments are not evidence, as the jury was properly instructed. (Final Jury Instructions at 5, ECF No. 174) ("The evidence in this case includes only what the witnesses said while they were testifying under oath, including the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and any facts that I have judicially noticed. Nothing else is evidence. *The lawyers' statements, arguments, and objections are not evidence*. The indictment is not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.") (emphasis added).

Finally, the Court is not persuaded by Defendant's argument that "[t]he Supreme Court has been consistent and clear for nearly 50 years that 'lascivious' means patently offensive representations or descriptions of specific 'hard core' sexual conduct." (Def's Mot. at 12, ECF No. 201). According to Defendant, the line of Supreme Court decisions that started with *Miller v. California*, 415 U.S. 15 (1973) and culminated in *United States v. Williams,* 553 U.S. 285 (2008), establishes the principle that for an image to depict lascivious exhibition of the genitalia or pubic area and thus qualify as illegal child pornography, it must be a "hard core" exhibition "in a manner connoting an overt sexual act." (Def's Mot. at 16, ECF No. 201.) This interpretation – equating lasciviousness with "hard core" pornography – has not been utilized by the Sixth Circuit (nor any other federal circuit), and indeed is incongruent with the law set forth above.

To conclude, the jury observed all the photographs that Defendant paid Jae to take and send to him, heard his words about those photographs, was properly instructed as to the considerations to utilize in evaluating those photographs, and ultimately determined that the photographs met the standard of lasciviousness. Defendant's disagreement with Sixth Circuit law and the jury's assessment of the evidence is not sufficient to meet his burden of establishing that the jury's verdict should be set aside.

**B. Counts 2, 3, and 4**

Count 2 charges both production and attempted production of child pornography on January 15, 2019, with respect to Nik, the thirteen-year-old sister of Jae. Counts Three and Four charge Defendant with attempting to use a minor, both Jae and Nik, to produce a visual depiction or transmit a live visual depiction, in violation of Title 18, United States Code, § 2251(a) and (e).

As to Count 2, the jury acquitted Defendant on the completed crime charged and

convicted him only of the attempted crime against Nik. Thus, the jury needed only find that Defendant intended to use or persuade Nik to engage in sexually explicit conduct, specifically, the lascivious exhibition of Nik's genitals and pubic region, and took a substantial step towards doing so, even if the resulting image did not meet the legal definition of sexually explicit conduct. *See United States v. Hart*, 635 F.3d 850, 857 (6th Cir. 2011) ("A person violates 18 U.S.C. § 2251 if he or she attempts to persuade a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct.").

Defendant contends:

> In order to find Defendant guilty of attempt, however, the government had to prove beyond a reasonable doubt that the defendant intended to commit the crime of using a minor to engage in sexually explicit conduct to produce a visual depiction and that the defendant did some overt act that was a substantial step towards committing the crime. As the Court further instructed the jury, "[t]he defendant's conduct must go beyond mere preparation, and must *strongly confirm that he intended to use a minor to engage in sexually explicit conduct* for the purpose of producing a visual depiction of that conduct." (*See* Doc. 174 at 22 (emphasis added).)

(Def's Mot. at 18, ECF No. 201.)

Defendant concludes that the evidence does not support that he "intended to have Nik do anything other than what was requested and received," which was "one naked picture" or "a nude picture." *Id*. This Court disagrees.

The Government accurately assesses the evidence that supported the verdict as showing Defendant's efforts to persuade Nik to engage in sexually explicit conduct and his specific intent to do so.

> On January 14, 2019, the defendant sent a text to Jae which stated, "ask your sister if she wants to earn $500." (Government Exhibit 2B). He followed that text up less than twenty minutes later by reminding Jae to "remember to ask your sister." (*Id.*). Approximately an hour later, he sent another text message to Jae that stated, "Hi…did you ask your sister yet." (*Id.*)

> When Jae responded that she had not done so, the defendant wrote "please ask her when you can." (*Id.*) Approximately 24 hours later, the defendant again inquired as to whether Jae had spoken to Nik about involving herself with the defendant stating again "have you spoken to your sister, if so, $500 for her." (*Id.*)
>
> When Jae confirmed that she and Nik were "in," the defendant requested to see what Nik looked like. (*Id.*) After receiving three photographs of Nik wearing clothing, the defendant responded "cute Very very cute both of you Before we start We need to promise that its our secret. This is as far as it goes…i promise. Now one naked picture of your sister, after that we'll plan our party." (*Id.*)

(Govt's Response at 18, ECF No. 189.)

Based on this evidence, the jury could have reasonably concluded that the defendant wanted the same thing from Nik that he had received from Jae, that is, images that depicted certain body parts that the defendant specified, as described above. Again, the Government correctly assesses the evidence:

> The record [shows] that prior to sending nude, close-up images of her own vagina to the defendant, Jae only received $150 for the nonexplicit images she sent to him. However, when Jae sent the defendant close-up images of her nude vagina, the defendant paid her $500.
>
> The jury could . . . infer that when the defendant offered $500 to Nik for a nude image of herself, he was not seeking mere nudity. Because the amount he offered Nik was commensurate with what he paid Jae *only after* she sent him images of herself engaged in [what the jury determined as] lascivious exhibition of the genitalia, it stands to reason that his request for a nude image of Nik meant the same thing it meant when he paid Jae $500: images depicting the lascivious display of Nik's genitalia.
>
> The jury's inference in this regard is further supported by the additional computer forensic evidence presented by FBI Special Agent Josh Saltar that revealed how the images of Nik were stored in his devices via a hidden photo vault application that was titled with Nik's full name.

*Id*. at 15–16 (emphasis in original).

Based on this evidence, the jury reasonably concluded beyond a reasonable doubt that Defendant attempted to produce child pornography featuring Nik on January 15, 2020. Reversal

of Defendant's conviction for Count 2 is therefore not warranted because, viewing the record as a whole, the judgment is supported by substantial and competent evidence.

Counts Three and Four are related to Defendant's communications with Jae between January 15 and 21, 2019, during which he repeatedly attempted to convince the minor girls to engage in a Facetime video call with him. Defendant argues that there was no evidence of him putting in a text that he wanted the girls to engage in any sexually explicit conduct, stating:

> The text message exchange with "Jae" introduced by the government does not contain any request that either "Jae" or "Nik" engage in "sexually explicit conduct," or that they do anything at all other than be naked, send naked pictures, "do certain things Nothing nasty" and/or "a couple of pictures I want her to take of how I want it."

(Def's Mot. at 20, ECF No. 201.)

According to Defendant, asking for nude photographs of the minor girls and photos of Nik of how Defendant "wants it," is insufficient. However, the jury heard and was permitted to consider not only the evidence contained in the chats about the Facetime call that were recovered from Jae's phone, but also the evidence and testimony about everything that had come before that call. As discussed above, that evidence showed what kinds of activities for which Defendant was willing to pay: $150 for bra and underwear or nude images, $500 for images that show just genitalia or fully nude reclined on a bed and touching her breast. For the Facetime call, Defendant initially offered to pay $1000 to Jae and $500 to Nik, and after they declined his offer, offering $1000 to each girl, plus scholarships, a car, and a trip to Florida.

In the context of the entire interactions between Defendant and Jae there is competent and substantial evidence supporting the jury's decision to convict on these counts. As with Count 2, nothing that Defendant has put forth regarding Counts Three and Four show that the jury's

inferences were unsupported by the evidence or meet his burden to have the Court overturn the jury's verdicts.

**C. Counts 5 and 6**

Counts 5 and 6 charge Defendant with knowingly attempting "to persuade, induce, entice, and coerce an individual who had not attained the age of 18 years" (*i.e.*, Jae in Count 5 and Nik in Count 6) to engage "in any sexual activity for which a person can be charged with a criminal offense, including Ohio Revised Code Section 2907.323 (Illegal use of minor in nudity-oriented material or performance)" in violation of 18 U.S.C. § 2422(b). *See, e.g.*, *United States v. Wyatt*, 713 Fed. App'x 467, 469 (6th Cir. 2017). Defendant contends that the evidence presented at trial was insufficient to support a conviction on Counts Five and Six because the term "sexual activity" as used in 18 U.S.C. § 2422(b) requires interpersonal physical contact.

Specifically, Defendant asserts that the sexual activity required to support the § 2422(b) charges alleged in Counts Five and Six had to be defined pursuant to 18 U.S.C. § 2246(2). Because the definition in § 2246(2) requires physical contact and there was no evidence introduced that such contact was completed or attempted by Defendant, he argued he could not be convicted of the offenses charged in Counts Five and Six as a matter of law.

While the Sixth Circuit has not opined on this exact issue, three federal circuits have: the Fourth, Seventh and Eleventh Circuits. Defendant relies on the Seventh Circuit case, while the Government contends that the Fourth and Eleventh Circuit analysis is correct.

In *United States v. Dominguez*, the Eleventh Circuit recently framed the question as follows:

> [T]he relevant language in § 2422(b) is "sexual activity for which any person can be charged with a criminal offense," and the question we must decide is whether the term "sexual activity" requires interpersonal physical contact.

997 F.3d 1121, 1123 (11th Cir. 2021) The *Dominguez* court further stated:

> The two appellate courts that have addressed this question, the Fourth and the Seventh Circuits, have come to different conclusions. *Compare United States v. Fugit*, 703 F.3d 248, 255 (4th Cir. 2012) (no interpersonal contact required), with *United States v. Taylor*, 640 F.3d 255, 258-59 (7th Cir 2011) (interpersonal contact required). Exercising plenary review as to this statutory question, *see, e.g., United States v. Williams*, 790 F.3d 1240, 1244 (11th Cir. 2015), we side with the Fourth Circuit and hold that "sexual activity" under § 2422(b) does not require actual or attempted physical contact between two persons.

*Id*. This Court too agrees with the Fourth and Eleventh Circuits that § 2422(b) does not require actual or attempted physical contact between two persons.

As did all three appellate courts looking at this issue, this Court begins the analysis of this issue with statutory interpretation of the text and its ordinary public meaning at the time of enactment. *United States v. Fitzgerald*, 906 F.3d 437, 442 (6th Cir. 2013). Congress added the term "sexual activity" to § 2422(b) in 1998. *Dominguez*, 997 F.3d at 1124 (citing Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, § 102, 112 Stat. 2934). The Court finds no dictionary (or other) definitions of "sexual activity" in the late 1990s and early 2000s. *Id*. Lacking a precise definition for "sexual activity" around the time of § 2422(b)'s amendment, both the Eleventh and Fourth circuits turned to the meanings of "sexual" and "activity" separately.

> When § 2422(b) was amended, the term "sexual" did not just refer to the act of physical intercourse with another. It also covered other types of behavior associated with sex. *See* Webster's Third New International Dictionary 2082 (2002) (defining "sexual" in part as "of or relating to the sphere of behavior associated with libidinal gratification"); Shorter Oxford English Dictionary 2780 (5th ed. 2002) (defining "sexual" as both "pertaining to or involving physical intercourse, as in reproduction," and "deriving from or relating to desire for sex or for carnal pleasure"); The American Heritage Steadman's Medical Dictionary 757 (1995) (defining "sexual" in part as "[i]mplying or symbolizing erotic desires or activity").
>
> For its part, "activity"—as relevant here—was not limited in the late 1990s or early 2000s to the interpersonal physical realm. It was instead defined as both "energetic action" and "any specific action or pursuit [recreational *activities*]." Webster's New

> World College Dictionary 14 (4th ed. 2004). *See also* 1 Shorter Oxford English Dictionary 23 (5th ed. 2002) (defining "activity" in part as a "[b]risk or vigorous action" or "a pursuit"); Black's Law Dictionary 33 (6th ed. 1990) (defining "activity" as "[a]n occupation or pursuit in which [a] person is active").

*Dominguez*, 997 F.3d at 1125; *see also Fugit*, 703 F.3d at 255.

As did the *Fugit* and *Dominguez* courts, this Court concludes that when combining these understandings of "sexual" and "activity," the ordinary public meaning of "sexual activity" around 1998 was an action or pursuit relating to intercourse *or* to the desire for sex or carnal pleasure. Because the latter formulation does not require physical touching between two persons, "sexual activity," within the meaning of § 2422(b), "need not involve interpersonal physical contact." *Fugit*, 703 F.3d at 255.

This Court finds that the meaning of the "sexual activity" element is not only plain; it also renders the statutory scheme coherent as a whole. The Sixth Circuit has stated that § 2422(b) "was designed to protect children from the act of solicitation itself." *United States v. Engle,* 676 F.3d 405, 419 (4th Cir.2012) (quoting *United States v. Hughes,* 632 F.3d 956, 961 (6th Cir. 2011)). "The primary evil that Congress meant to avert by enacting § 2422(b) was the psychological sexualization of children, and this evil can surely obtain in situations where the contemplated conduct does not involve interpersonal physical contact." *Fugit*, 703 F.3d at 255

This Court is unpersuaded by the Seventh Circuit's interpretation of "sexual activity" and "sexual act" as synonymous as used in Title 18. As the *Fugit* court convincingly explained:

> Finally, we believe that the Seventh Circuit's decision in *United States v. Taylor,* 640 F.3d 255 (7th Cir. 2011), upon which Fugit places great weight, was mistaken. The *Taylor* court held that the phrase "sexual activity" in § 2422(b) is synonymous with the phrase "sexual act," as defined in 18 U.S.C. § 2246(2). *Id.* at 259–60. That complex provision defines "sexual act" to require not only interpersonal physical contact but interpersonal physical contact involving the genitalia or anus—and, for persons who are sixteen or older, requires either oral sex or actual penetration of the genital or anal opening.

> We decline *Taylor*'s invitation to cut and paste this restrictive definition into § 2422(b) because doing so would contravene express statutory text. Section 2246 explicitly limits the definitions provided therein to the chapter in which it resides. Specifically, the very first words of the section are "[a]s used in this chapter" (with the various definitions following), and the section's title is "[d]efinitions for chapter." Whereas § 2246 appears in Chapter 109A of Title 18, § 2422(b) is situated in an entirely different location, Chapter 117. Simply put, we find "no indication that Congress intended to import the definitions of chapter 109A to [another] chapter." *United States v. Sonnenberg,* 556 F.3d 667, 670 (8th Cir.2009).

*Fugit*, 703 F.3d at 256–57.

The Eleventh Circuit too persuasively rejected *Taylor*:

> The Seventh Circuit has come to a different conclusion. Applying the rule of lenity, it held in *Taylor*, 640 F.3d at 258-59, that "sexual activity" in § 2422(b) requires actual or attempted interpersonal physical contact. The *Taylor* opinion contains some pertinent observations, but like the Fourth Circuit, we choose not to follow it. *See Fugit*, 703 F.3d at 255-56.
>
> First, the Seventh Circuit acknowledged that, as a textual matter, the term "sexual activity" includes individual conduct such as masturbation. *See Taylor*, 640 F.3d at 259. Because, as discussed above, "sexual activity" encompasses activities beyond those involving interpersonal physical contact, we do not consider the term to be ambiguous. *See Fugit*, 703 F.3d at 255.
>
> Second, the Seventh Circuit looked to the meaning of "sexual act" in 18 U.S.C. § 2246(2)(D), a definitional provision which requires the intentional touching of a minor's genitals. *See Taylor*, 640 F.3d at 257. That provision, however, applies to statutes in Chapter 109A of Title 18, and § 2422(b) is located in Chapter 117. Given that "sexual activity" and "sexual act" are not necessarily synonymous, *see Taylor*, 640 F.3d at 259-260, we do not think it is appropriate to borrow the definition of "sexual act" from § 2246(2)(D). *See Fugit*, 703 F.3d at 256. *See also* II Bouvier Law Dictionary at 2595 ("Sexual conduct is a broader category than sexual act.").
>
> Third, the concern motivating the Seventh Circuit was that not reading "sexual activity" to require interpersonal physical contact could result in the criminalization of (and a mandatory minimum 10-year prison sentence for) flirting, flashing, or watching a pornographic movie, a pole dancer, a striptease artist, or an erotic painting. *See Taylor*, 640 F.3d at 257-58. But "sexual activity" in § 2422(b) is not a stand-alone term; the full phrase is "sexual activity for which any person can be charged with a criminal offense." And so it would seem, as "a general matter, [that] conduct that is innocuous, ambiguous, or merely flirtatious is not criminal and . . . not subject to prosecution under § 2422(b)." *Fugit*, 703 F.3d at 255. In other words, the term "sexual activity" is limited by the requirement that the conduct in question also be criminally proscribed.

*Dominguez*, 997 F.3d at 1126.

Last, Defendant asserts that this Court should limit sexual activity as used in § 2422(b), based on how the State of Ohio defines sexual activity in its criminal code. As the Government correctly notes, this position would have the effect of changing the scope of the term of a federal statute based on technical definitions and labels under the state law where the offense occurred. This is an untenable interpretation. While Ohio law is relevant to determining whether the defendant violated § 2422(b) in this specific case, it is relevant to the separate element that "any person can be charged with a criminal offense" and cannot limit the term "any sexual activity" as a matter of federal law. As to the relevant aspect of Ohio law, the evidence establishes (and Defendant does not dispute) that he took a substantial step toward the completion of the crime and that, had he been successful in his attempts, he could have been charged with violating Ohio Revised Code § 2907.323.

Based on the foregoing, the Court concludes that reversal of Defendant's convictions on Counts 5 and 6 is not warranted because the judgment is supported by substantial and competent evidence.

**D. Count 7**

The jury found Defendant guilty of Count 7, which charged him with making a notice seeking or offering participation by a minor in an act of sexually explicit conduct, in violation of Title 18, United States Code, § 2251(d)(1)(B) and (e). Defendant contends that the guilty verdict on this Count should be overturned because the jury should not have been able to consider any evidence other than the words that he put in the messages he exchanged with Jae and one-to-one messages cannot constitute a notice as a matter of law. Defendant's arguments are not well taken.

As to the latter argument, the Sixth Circuit has held that one-to-one communications can encompass a notice under § 2251(d)(1). *United States v.Sammons*, 55 4th 1062 (6th Cir. 2022). Defendant here, just like the defendant in *Sammons*, sent online one-to-one written communications in which he sought to have a child engage in sexually explicit conduct. He was charged with and convicted on the basis of the messages that he sent directly to one undercover agent. Further, the *Sammons* Court did not base its determination that one-to-one messages constitute notices on the specific facts of that case. Instead, the Court looked at the plain language of the statute and found that the words "any notice" unambiguously included private communications between just two parties. *Sammons*, 55 F.4th at 1067 ("'[A]ny notice' naturally covers private one-on-one messages." (alteration in original)).

As to Defendant's first position, and as this Court indicated above in its discussion of Counts 1 through 4, the entirety of the testimony and evidence that was introduced during trial in this case provides sufficient support for the jury's determination that the defendant sought depictions of Jae and Nik engaged in sexually explicit conduct. The jury had evidence that the defendant would pay $500 only for nude and sexually explicit images, that he offered $500 for a nude image of Nik, that he offered up to $2000 plus other gifts if the girls would engage in a Facetime video call with him, and that he wanted them to pose in certain ways in photos before the Facetime call but would not put in writing what those poses were. The jury was instructed that they were allowed to make "reasonable inferences" from the evidence that was introduced and it is a reasonable inference from all the evidence before the jury that the defendant's intent when he offered to pay Jae and Nik up to $2000 was that they would engage in sexually explicit conduct.

Thus, reversal of conviction on Count 7 is not warranted because, viewing the record as a whole, the judgment is supported by substantial and competent evidence.

**IV.**

For the reasons stated above, the Court **DENIES** Defendant Bernhard Jakits' Motions for Judgment of Acquittal. (ECF Nos. 169, 183, 201.)

**IT IS SO ORDERED.**

**8/24/2023**
**DATE**

**s/Edmund A. Sargus, Jr.**
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**